**SWITZERLAND COUNTY SCHOOL CORPORATION, Defendant-Appellant,**

v.

**Edward M. SARTORI, Plaintiff-Appellee.**

**No. 1–782A189.**

Court of Appeals of Indiana, First District.

Nov. 30, 1982.

Rehearing Denied Jan. 4, 1983.

Ronald J. Hocker, Vevay, for appellant.

Gary K. Kemper, Jenner & Kemper, Madison, for appellee.

Melinda L. Selbee, Indianapolis, for amicus curiae, Indiana School Boards Ass'n.

RATLIFF, Presiding Judge.

## STATEMENT OF CASE

Switzerland County School Corporation appeals an award of $5,053.23 in favor of Edward M. Sartori upon his complaint for breach of a teacher's employment contract. We reverse.

## FACTS

An employment agency arranged an interview between Mr. Sartori, an Ohio resident, and Mr. Roeschlein, principal of the Switzerland County School Corporation, for a vocational-agricultural teaching position. Sartori informed Roeschlein that he was not certified to teach school in Indiana and also that he had a limited knowledge of the subject area to be taught, his expertise being in the areas of greenhouse-type work and landscaping. Nevertheless, Sartori was offered the position and accepted, signing a prescribed teacher's contract with the school corporation on November 10, 1980. The form contract was prescribed by the State Superintendent of Public Education and covered the fixed period from October 20, 1980, to May 30, 1981. Compensation was fixed in the amount of $8,815.80. On February 16, 1981, the school corporation

terminated Sartori's employment with $4,218.26 unpaid on the contract. Sartori brought this action seeking compensatory, consequential, and punitive damages. The court, after hearing evidence, entered the following judgment on January 21, 1982:

"Evidence was presented to this Court on December 3, 1981. A Motion for Findings of Fact and Conclusions of Law was filed. Trial briefs were filed by both sides.

The Court has considered the evidence, the arguments presented and the trial briefs. The Court now finds: Plaintiff and defendant executed an official 'regular teacher's contract' on November 10, 1980. Of the Eight Thousand, Eight Hundred Fifteen Dollar and Eighty Cent ($8,815.80) compensation plaintiff received Four Thousand, Five Hundred Ninety-seven Dollars and Fifty-four Cents ($4,597.54). On Monday, February 16, 1981 Defendant Corporation terminated the contract. A health insurance fringe benefit was discontinued by Defendant Corporation effective February 16, 1981. Plaintiff paid Two Hundred Sixty-five Dollars and Ninety-seven Cents ($265.97) to continue his same coverage until May 30, 1981, the ending date of the contract. Plaintiff spent Fifty Dollars ($50.) to move from Vevay, his place of employment and where there was no similar employment available to him after the termination of the contract. Plaintiff paid his attorney a Fifty Dollar ($50.) retainer for representation in the present action. Plaintiff's move from Vevay cost him Nineteen Dollars ($19.00) in lost rent. Plaintiff paid Six Hundred Dollars ($600.) to an employment agency to obtain the job with Defendant Corporation. There was no guarantee that the job would extend beyond the initial seven (7) month and ten (10) days [sic] contract period. Plaintiff disclosed his lack of qualification to Defendant Corporation before entering into the contract. Defendant Corporation advised plaintiff of dissatisfaction with plaintiff's performance under the contract, but plaintiff was not extended the opportunity to exercise

his rights as required by due process before defendant terminated the contract. A situation similar to the one presented in the present lawsuit is not likely to reoccur [sic] in the Switzerland County School Corporation in the for[e]seeable future.

The Court now concludes that the contract was terminated illegally. The Court further concludes that plaintiff suffered actual and consequential damages in the amount of Five Thousand, Fifty-three Dollars and Twenty-three Cents ($5,053.23). Punitive damages are not appropriate.

IT IS THEREFORE ORDERED AND ADJUDGED that plaintiff have and recover judgment of defendant in the amount of Five Thousand, Fifty-three Dollars and Twenty-three Cents ($5,053.23). Costs are assessed against defendant."

Record at 36–37.

## ISSUES

The school corporation raises the following issues on appeal:

"1. Whether or not the trial court acted contrary to law in not finding that the contract at issue was void.

2. Whether or not the trial court acted contrary to law in concluding that the contract was terminated illegally and awarding actual and consequential damages in the amount of Five Thousand Fifty-three Dollars and Twenty-three Cents ($5,053.23).

3. Whether or not the trial court acted contrary to law by awarding plaintiff attorney's fees in the instant judgment."

## DISCUSSION AND DECISION

Because we determine that the contract involved herein was illegal, hence void as a matter of law, and reverse the trial court's judgment, we discuss only the first issue.

The school corporation argues that case law and public policy considerations require school teachers to be licensed by appropriate state agencies before they may make an enforceable teaching contract with public

school corporations. Sartori contends that while the case law relied upon by the school corporation was based upon a former statute specifically prohibiting the employment of a nonlicensed teacher, current statutes contain no such prohibition. He further asserts that because the current statutes are ambiguous with respect to the mandatory requirement of teacher licensing and because the school corporation knew that he was not licensed when it provided him with the contract, the corporation should be equitably estopped from raising the invalidity of the contract as a defense in this action. Although we are sympathetic with his predicament, after careful review of and reflection on the issue, we must respectfully reject Sartori's position.

It is true that the statute pertaining to teachers prior to the current recodification of the law explicitly stated that "no person ... may be employed as ... [a] teacher ... unless such person holds a license issued by the state board of education of the kind and grade required for the particular position, ..." Ind.Code (1971) § 20–6–1–5(c) (Burns Code Ed.). In the current codification, "teacher" is defined as "a professional person whose position in the school corporation requires certain teacher training preparations and licensing." Ind.Code (1982) § 20–6.1–1–8. Other provisions of this legislation vest the power to license or to grant permission to serve as a particular kind of teacher in the commission on teacher training and licensing, Ind.Code (1982) §§ 20–6.1–3–1; 20–6.1–1–4, and require teachers to be employed on a carefully worded, prepared contract form. Ind.Code (1982) §§ 20–6.1–4–3–9. We do not believe that the legislature in its repeal of prior legislation intended to repeal the requirement that teachers be licensed or certified pursuant to uniform, state-wide standards. Certainly the legislation currently enacted cannot be read to permit public school principals or corporations to certify, by means of a contract, unlicensed persons as "teachers" on an ad hoc basis.[1] Such an interpretation would render the legislation pertaining to licensing authorities and procedures nugatory. Rules of statutory construction prohibit such a result. *See* 26 I.L.E. *Statutes* § 103 at 311 (1960).

Additionally, the public policy considerations underlying the earlier legislative mandate that public school teachers be licensed are as valid today as they were a century ago. Perhaps the best articulation of this concern was expressed in the case of *Jackson School Township v. Farlow,* (1881) 75 Ind. 118, (overruled on other grounds) where our supreme court held that even though a person may have the necessary learning, ability, and preparation for the duties of a teacher, unless he were also properly licensed he could not recover damages for breach of a contract entered into with officers of a public school corporation. Judge Elliott, in writing for the court, said,

"The purpose of the statute is to compel those who desire to enter upon the responsible duties of teachers to submit to an examination by competent school officers, and to effect this purpose the stringent provision prohibiting recoveries by unlicensed teachers was incorporated. The question of qualification and preparation must be determined by the school authorities, not by courts or juries."

75 Ind. at 119–120. Likewise, current legislation evinces no intent that the matters of teacher qualification and licensing be left to courts and juries.

Furthermore, to permit Sartori to recover in this instance on the grounds of equitable estoppel would be to permit the parties in this cause to circumvent the strong public policy and obvious legislative intent prohibiting the employment of persons not certified by appropriate authorities as a licensed teacher. We recognize that Judge Chipman wrote for this court in *Cablevision of Chicago v. Colby Cable Corp.,* (1981) Ind.App., 417 N.E.2d 348, 354, *trans. denied,* that equitable estoppel may be appropriately applied when a party had relied on represen-

---

1. We note that the commission on teacher training and licensing has promulgated certain regulations respecting the employment of high school vocational teachers without the requisite qualifications for regular licensing. *See* 530 I.A.C. § 1–1–6 and § 2–1–9 (1979).

tations by a public official and the applicable statute is ambiguous. However, Judge Chipman also noted that "[o]ur courts have been particularly unsolicitous of estoppel ... arguments in cases where the unauthorized acts of public officials somehow implicate government spending powers." *Id.* He pointed out that the reason for the general rule that governmental bodies cannot be estopped by the unlawful acts of public officials is based on the realization that if estoppel were applied, " 'a dishonest, incompetent or negligent public official could wreck the interests of the public.' *State v. Roberts,* (1948) 226 Ind. 106, 134, 78 N.E.2d 440, 446 (dissenting opinion)." *Id.* We remind Sartori that in *Cablevision* the court on appeal did not hold either that estoppel was or was not applicable, but merely that it was a question for the trier of fact under the guidelines set out by the court and with foremost consideration being given the public interest.

We note also that the other case Sartori relies upon to support his equitable estoppel argument, *State ex rel. Agan v. Hendricks Superior Court,* (1968) 250 Ind. 675, 235 N.E.2d 458, did not implicate government spending powers as does the instant case. Equitable estoppel was applied by the court in *Hendricks Superior Court* to prevent a challenge to procedures which had been agreed upon by the parties in an eminent domain case. The technical deficiency which the state was estopped from asserting involved only the court's method of appointing appraisers. Had estoppel not been applied, additional public funds would no doubt have been expended to comply with a mere technicality. Such a useless expenditure of public funds could hardly be justified as in the public interest. Likewise, we find the expenditure of public funds in the name of equitable estoppel in the instant cause to be contrary to the public interest.

Judgment reversed.

NEAL, and ROBERTSON, JJ., concur.