Kathleen Ann STEWART, Appellant (Plaintiff Below),

v.

FORT WAYNE COMMUNITY SCHOOLS, Appellee (Defendant Below).

No. 92A03–8901–CV–10.

Court of Appeals of Indiana, Third District.

Oct. 16, 1989.

Charles W. McNagny, Thomas M. Kimbrough, Barrett & McNagny, Fort Wayne, for appellee.

STATON, Judge.

Kathleen Ann Stewart appeals the cancellation of her contract with Fort Wayne Community Schools (FWCS). The decision of the FWCS Board to cancel her contract was reviewed and upheld by the Whitley Circuit Court. Stewart also appeals denial by the trial court of her claim for reinstatement, damages, and attorney fees under 42 U.S.C. Sections 1983 and 1988.

Stewart presents us with several issues on appeal, consolidated and restated these are:

1. Whether the board was required to retain Stewart over other non-tenured employees?

2. Whether the board action was arbitrary, capricious, and contrary to law?

3. Whether Stewart was denied substantive due process?

4. Whether Stewart has a claim under 42. U.S.C. sections 1983 and 1988?

Reversed.

Stewart was first employed by FWCS as a psychometrist in January, 1978. Thereafter, she was employed on annual contracts for six consecutive years. Pursuant to a pretrial order of the Whitley Circuit Court, the parties stipulated that Stewart was a "tenured" teacher,[1] that she was terminated pursuant to the provisions of IC 20–6.1–4–10,[2] and that two non-tenured em-

John S. Bloom, Bloom, Bloom & Fleck, P.C., Columbia City, for appellant.

1. Stewart earned the status of "tenure" pursuant to IC 20–6.1–4–9 (Burns Code Ed., 1985 Replc.). This section provides that:

(a) Each person who:

(1) Serves under contract as a teacher in a public school corporation for five [5] or more successive years; and

(2) at any time enters into a teacher's contract for further service with that school corporation;

becomes by that a permanent teacher of that school corporation. When a contract between the school corporation and a permanent teacher expires by its terms, that contract is considered to continue indefinitely as an indefinite contract.

(b) An indefinite contract remains in force until the permanent teacher reaches seventy-one [71] years of age, unless it is:

(1) Replaced by a new contract signed by both parties; or

(2) Cancelled as provided in sections 10 and 11 [20–6.1–4–10 and 20–6.1–4–11] of this chapter.

For purposes of this opinion we will use the terms "tenure" and "permanent" interchangeably.

2. Section 10 provides in pertinent part that:

(a) An indefinite contract with a permanent teacher may be cancelled in the manner specified in section 11 [20–6.1–4–11] of this chapter for only the following grounds:

(1) Immorality;

(2) Insubordination, which means a willful refusal to obey the state school laws or reasonable rules prescribed for the government of the school corporation;

ployees were retained at the time of the cancellation of Stewart's contract.

■ On appeal we will review the administrative proceedings to determine whether the board decision was supported by substantial evidence, was not arbitrary and capricious, and whether the board followed all relevant rules of law and procedure, including its own rules. *Metropolitan School District of Martinsville v. Mason* (1983), Ind.App., 451 N.E.2d 349, 353, *trans. denied.*

## I.

### Cancellation

On February 18, 1983, Stewart was notified that cancellation of her contract would be considered at a school board meeting on March 28, 1983. The reasons given for cancellation of her contract were: declining student enrollment; uncertainty of funding; her lack of dual certification; and seniority. Stewart requested a hearing before the board which was held on March 14, 1983. On March 28, 1983, the board cancelled her contract effective after June 17, 1983.

It is apparent from the findings of the board that Stewart's contract was cancelled pursuant to an administrative reduction policy adopted by the board on November 23, 1981. The policy provided for the elimination of the guidance counselor and psychometrist positions and the creation of new, combined, positions for "dean/counselor" and "psychometrist/counselor". The procedural guidelines for implementation of this dual certification policy included the allowance of time for guidance counselors and psychometrists to meet the certification requirements of the new dual position.[3]

(3) Neglect of duty;
(4) Incompetency;
(5) Justifiable decrease in the number of teaching positions; or
(6) Other good and just cause.

**3.** Stewart was originally laid off on March 22, 1982, pursuant to this dual certification policy. However, upon the recommendation of FWCS

Stewart contends that in January of 1983 a new policy for administrative reduction was adopted replacing the dual certification policy. The record supports this claim. According to the minutes of a board meeting held on January 24, 1983, the new administrative reduction guidelines were "to replace those adopted by the Board on *November 23, 1981.*" R. 270 (emphasis added). The 1983 guidelines made no mention of a dual certification requirement. The 1983 guidelines state in pertinent part that:

> Administrators will be selected for reduction in force in a manner that is fair and equitable after the qualifications of the individuals potentially involved have been reviewed.

R. 270. It is clear from our review of the record that both the board and the trial court based their findings on the rescinded administrative reduction policy of 1981.

One of the factors we consider in reviewing a school board decision is whether the board followed its own rules. *Mason* at 451 N.E.2d 353. In this case it did not. We must now determine if Stewart was prejudiced by this failure.

■ The guidelines in effect at the time Stewart's contract was cancelled stated that reduction would be in a fair and equitable manner "after the qualifications of the individuals potentially involved have been reviewed." R. 270. At the time Stewart's contract was cancelled her position was classified as "psychometrist". Board finding number 14 states in pertinent part that:

> 14. The procedure approved by the School Board on *November 23, 1981,* to accomplish the elimination of the psychometrist position included the following:

\* \* \* \* \* \*

attorneys, Stewart was re-employed for the 1982–83 school year because proper contract cancellation procedures had not been followed. When the board gave her a contract for the 1982–83 school year she achieved the status of a "permanent" teacher because she had already served under five successive contracts as required by IC 20–6.1–4–9.

2. Psychometrists ... will be assigned to the positions of psychometrist/counselor.

\*   \*   \*   \*   \*   \*

5. The psychometrist/counselor position will require certification as a psychometrist and guidance counselor.

\*   \*   \*   \*   \*   \*

8. In some situations it may be necessary to give a guidance counselor or psychometrist a period of time to fully meet the certification requirements of the position to which he/she is assigned.

R. 34 (emphasis added).

At the time Stewart's contract was cancelled two non-tenured employees were retained in the psychometrist/counselor position who were not certified counselors. The school board contends that they were more qualified than Stewart because they had classroom teacher's licenses. However, a classroom teacher's license is only one of several prerequisites for a counseling license. 530 IAC 2–1–11 (in effect at the time Stewart's contract was cancelled).[4] At the time of the school board action, title 510 article 12 of the Indiana Administrative Code governed licensing requirements for Pupil Personnel Services.[5] Rule 2 of that article stated that "[a]ll personnel providing pupil personnel services *shall be properly certified* in their service area." 510 IAC 12–2–1(A) (emphasis added); see also *Switzerland County School Corporation v. Sartori* (1982), Ind.App., 442 N.E.2d 702, 704, *reh. denied, trans. denied,* (discusses importance of teacher licensing). During the hearing conducted by the trial court this rule was explained by Denny C. Skeens, Director of Accreditation and Facility Planning for the State Department of Education. He testified that the function of the Accreditation division was to evalu-

ate schools to determine whether they were complying with the "requirements of the State Board of Education and state statute." R. 345. Skeens testified that the FWCS policy of allowing personnel without a counselor's license to serve in the position of "psychometrist/counselor" (including the "acting" category) was "in violation of state rules". R. 349. We agree.

The language of rule 2 clearly stated that personnel *"shall be properly certified"*. Nevertheless, the school board retained non-tenured employees who, like Stewart, were licensed only in psychometry, in the psychometrist/counselor position.[6] The school board cannot presume to create new licensing requirements for teachers; this responsibility has been delegated by the legislature to the State Board of Education. Currently at IC 20–1–1–6 (Burns Code Ed., 1988 Supp.) and IC 20–6.1–3 (Burns Code Ed., 1988 Supp.).[7] FWCS has exceeded its authority and acted contrary to law.

## II.

### Tenure Rights

■ Stewart also contends that the school board action was contrary to law because she had tenure while the other two employees who were retained did not. She cites *Barnes v. Mendenhall* (1932), 98 Ind. App. 229, 183 N.E. 556, and *Watson v. Burnett* (1939), 216 Ind. 216, 23 N.E.2d 420, in support of her position. In *Barnes* the school board cancelled a permanent teacher's contract pursuant to Chapter 97 of the Acts of 1927, page 259, commonly known as the "Teachers Tenure Act". Although there have been a few changes in the wording, and the section has since been recodified, the substance is the same as IC

---

4. This section was repealed in 1984. Requirements for counselor are currently found at 511 IAC 10–1–65.

5. Transferred to 511 IAC 4–1; counselors, psychometrists, and psychologists I and II all fall under Pupil Personnel services.

6. There is evidence in the record that at least one of these employees performed only the test-

ing duties of a psychometrist although he carried the dual title.

7. Although some of these sections have been amended, and some added, since the school board cancelled Stewart's contract in 1983, the point we make is that the State Board of Education, not the school board, had the exclusive authority to determine licensing requirements at that time.

20–6.1–4–9 and IC 20–6.1–4–10 under which Stewart's contract was cancelled. Chapter 97 provided that a teacher who had served under five successive contracts and who then entered into a contract for further service, thereby became a permanent teacher serving under an indefinite contract. Section two of the act provided that an indefinite contract could be cancelled for certain causes including a "justifiable decrease in the number of teaching positions ...". Grace Barnes, like Stewart, was a permanent teacher serving under an indefinite contract. The school board cancelled her contract because of a "justifiable decrease in the number of teaching positions." *Barnes* at 98 Ind.App. 232, 183 N.E. 556. Barnes appealed the decision of the school board because other non-permanent teachers who did not have indefinite contracts were filling positions which Barnes was licensed to fill. The court concluded that a permanent teacher's license could not be cancelled as long as there were non-permanent teachers holding positions which the permanent teacher was licensed to fill.

The trial court concluded as a matter of law that *Barnes* did not apply to Stewart's situation because Stewart "was less qualified for the Psychometrist/Counsel [sic] position than anyone else retained in the position." R. 23. However, since we have determined that the two non-permanent employees did not have the proper certification for the position, we cannot agree that *Barnes* does not apply.

FWCS contends that *Barnes* does not apply because Stewart is not a classroom school teacher. Appellee's Brief 33. As we have already noted, FWCS has stipulated that Stewart was a tenured teacher and that her contract was cancelled pursuant to the provisions of IC 20–6.1–4–10. That section applies to permanent teachers with indefinite contracts. Although the

current law does not use the term "tenure", that term applies to permanent teachers serving under indefinite contracts. IC 20–6.1–1–8 (Burns Code Ed., 1985 Replc.), defines the term "teacher" as:

a professional person whose position in the school corporation requires certain teacher training preparations and licensing. The term includes, but is not limited to, any superintendent, supervisor, principal, attendance officer, teacher, or librarian.

According to IC 20–6.1–1–4 (Burns Code Ed., 1982 Supp.): [8]

the term "license" refers to any document issued by the commission on teacher training and licensing, which grants permission to serve as a particular kind of teacher. The term includes, but is not necessarily limited to, any certificate or permit, issued by the commission on teacher training and licensing.

Stewart had a school psychometrist's license which she professionalized by meeting the licensing requirements of the Commission on Teacher Training and Licensing for School Psychologist I. R. 162, 227; 530 IAC 2–1–11.[9] Stewart is a teacher according to the statutory definition; therefore *Barnes* applies.

Applying the rule in *Barnes* to Stewart's situation we conclude that since the two non-tenured employees were not properly licensed, Stewart's contract should not have been cancelled.

### III.

### *Section 1983*

■ Stewart contends that she was denied substantive due process by the arbitrary and capricious conduct of the school board. She seeks redress under 42 U.S.C. section 1983,[10] and attorney's fees under section 1988.

8. This section was amended in 1984 to change "commission on teacher training and licensing" to "state board of education". IC 20–6.1–1–4 (Burns Code Ed., 1985 Replc.)

9. This section was transferred from the Commission on Teacher Training and Licensing to the State Board of Education in 1984; these

requirements are now found at 511 IAC 10–1–68.

10. Section 1983, entitled "Civil action for deprivation of rights" states in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any

Stewart contends that she has been deprived of a property right protected by the due process clause of the Fourteenth Amendment to the United States Constitution. The United States Court of Appeals for the Seventh Circuit, addressing a claim by a non-tenured teacher that her substantive due process rights had been denied when she was terminated, stated:

> The claim that a person is entitled to "substantive due process" means ... that state action which deprives him of life, liberty, or property must have a rational basis—that is to say, the reason for the deprivation may not be so inadequate that the judiciary will characterize it as "arbitrary".

*Jeffries v. Turkey Run Consolidated School District* (7th Circ.1974), 492 F.2d 1, 3–4. In order for Stewart to prevail on a substantive due process claim she must show that the cancellation of her contract by FWCS constituted arbitrary action which deprived her of an interest in liberty or property to which she was entitled.

In *Jeffries*, the plaintiff did not prevail because the court determined that she had no liberty or property interest at stake. Stewart, however, did have a property interest to which she was entitled by IC 20–6.1–4–9, which gave her "permanent" status, and IC 20–6.1–4–10, which set out limited grounds for the cancellation of her contract. We have already characterized the cancellation of Stewart's contract as unlawful; we must now determine if the board action constituted an arbitrary deprivation of property which entitles Stewart to Fourteenth Amendment due process protection.

In *Riggin v. Board of Trustees of Ball State University* (1986), Ind.App., 489 N.E.2d 616, 627, *trans. denied,* this court stated that:

> in order to satisfy substantive due process, an administrative decision must be in accord with previously stated ascertainable standards. The requirement is

to make certain that administrative decisions are fair, orderly, and consistent rather than irrational and arbitrary. The standard should be written with sufficient precision to give fair warning as to what the agency will consider in making its decision, and it should be made readily available to those having potential contact with the administrative agency.

(Internal quotation marks omitted; citations omitted.) The ascertainable standards in this case consisted of the state licensing requirements and the FWCS policy approved at the January 1983 board meeting. If the board had followed these standards its decision would have been "fair, orderly, and consistent". However, the board followed rescinded procedure that was inconsistent with statutory licensing requirements. The board decision to cancel Stewart's contract was not made in accord with "previously stated ascertainable standards", therefore, we conclude that the board action was irrational and arbitrary. FWCS has deprived Stewart of a property interest secured by the due process clause of the Fourteenth Amendment. This deprivation entitles her to damages and equitable relief pursuant to Section 1983, and to attorney fees under Section 1988.

We reverse the judgment of the trial court and remand to the trial court for proceedings consistent with this opinion.

CHEZEM, J., concurs.

HOFFMAN, J., dissents with separate opinion.

HOFFMAN, Justice, dissenting.

I respectfully dissent from those portions of the majority opinion describing the school board's action as arbitrary and capricious. The majority perceives that Stewart's contract was cancelled pursuant to the rescinded administrative reduction policy, but a thorough examination of the findings of the board of school trustees discloses reliance upon the revised guide-

---

State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

lines approved and authorized on January 24, 1983.

The revised guidelines for administrative reductions provided in pertinent part:

"1. Administrators are not subject to lay off/recall in the same manner as are teachers, and therefore, if there are more administrative personnel under contract than there are available positions, the excess administrators will either be reassigned or be subject to termination.

Administrators will be selected for reduction in force in a manner that is fair and equitable after the qualifications of the individuals potentially involved have been reviewed.

2. Re-assignments of some administrators to different units and/or different positions as a result of the reduction in number of administrative positions may be necessary.

Displaced administrators may be placed in teaching positions according to their seniority in the appropriate certification group.

3. If there are displaced administrators who are not qualified for any available position, the Board will be asked to cancel the contract of those administrators.

The Superintendent's recommendation for cancellation of contracts will be made to the Board of School Trustees at the second meeting in March.

If there are administrators whose contracts are to be cancelled, the procedures followed will be those outlined in the applicable state statutes. (IC 20–6.1–4 et seq.)"

The school board's findings indicate that administrative employees who worked as psychometrists were re-assigned to different positions as a result of the elimination of the position of psychometrist.

"19. ... All other administrative employees who formerly worked as psychometrists are employed as psychometrist/counselors if they had a counseling license, or as acting psychometrist/counselors if they had only a teacher's license while they work toward a counseling certificate in accordance with the program approved by the School Board on November 23, 1981 (Board Exhibit 7).

\* \* \* \* \* \*

22. There is a justifiable need to decrease the number of administrative positions and to eliminate the position of psychometrist.

23. Neither North Central nor the Department of Public Instruction require [sic] any particular staffing levels for psychometrists. Although Rule 5–1 (Exhibit G) issued by the Commission on General Education of the Indiana State Board of Education requires testing of special education students, no permanent employment of full-time psychometrists is mandated. Therefore, the job of psychometrist may be eliminated without violating any rule or regulation of this State or any accreditation requirements of North Central."

Stewart, a displaced administrator under the revised guidelines, was not qualified for the position of psychometrist/counselor or acting psychometrist/counselor.

"20. Although Kathy Stewart has, since her layoff in March of 1982, been working toward a teacher's license, one of the prerequisites to a counseling license (see Exhibit A), she still has over 30 hours of studies to complete to obtain a teacher's certificate. She is the least senior in terms of service with the Fort Wayne Community Schools under regular contract of all psychometrists holding only a single certification (Board Exhibits 10 and 11)."

Because Stewart could not be re-assigned, her contract was subject to termination.

"25. There are currently no job openings for psychometrist/counselors. Kathy Stewart has the least service under regular contract of all certified psychometrists who have no other certification. There is no other administrative position which she is qualified or certified to perform."

The findings of the school board with respect to the cancellation of Stewart's contract reflected due consideration of and

**14**

compliance with the revised guidelines for administrative reductions.[1]

I cannot agree that the school board failed to follow its own guidelines, thereby rendering its action arbitrary and capricious. Accordingly, I must dissent from the majority's conclusion that Stewart is entitled to damages and equitable relief under 42 U.S.C. § 1983.

I further dissent from the majority's conclusion that Stewart, as a tenured teacher, could not be discharged while non-tenured employees were retained as acting psychometrist/counselors. The majority bases its decision upon *Barnes v. Mendenhall* (1932), 98 Ind.App. 229, 183 N.E. 556. In *Barnes*, this Court rejected the proposition that a school board, justifiably seeking to reduce the number of teaching positions, has the discretion to choose between tenured and non-tenured teachers, both of whom are licensed to fill the position which remains. *Id.* at 241–242, 183 N.E. at 560.

The reasoning from *Barnes* is inapplicable to the facts of the case at bar. The school board in the instant case found that Stewart was not qualified for a re-assignment to the position of acting psychometrist/counselor. The position was available to psychometrists who had teacher's licenses, and Stewart had yet to obtain such a license. Because the board did not impermissibly choose between equally qualified tenured and non-tenured teachers, *Barnes* is inapposite.

For the foregoing reasons, I dissent.

---

1. The school board's discussion of the rescinded policy merely supplied the context for the board's initial decision to lay off Stewart.