Kathleen Ann STEWART, Appellant
(Plaintiff Below),

v.

FORT WAYNE COMMUNITY
SCHOOLS, Appellee
(Defendant Below).

No. 92S03–9012–CV–805.

Supreme Court of Indiana.

Dec. 27, 1990.

Rehearing Denied March 21, 1991.

John S. Bloom, Bloom, Bloom & Fleck, Columbia City, for appellant.

Charles W. McNagny, Thomas M. Kimbrough, Barrett & McNagny, Fort Wayne, for appellee.

SHEPARD, Chief Justice.

This case presents the question whether there are circumstances in which a tenured teacher in Indiana may be discharged due to a reduction in force when a non-tenured teacher is retained in a position for which neither one is fully qualified under state law. We hold that the answer is yes.

Kathleen Stewart was hired by Fort Wayne Community Schools as a psychometrist in 1978. During her years with the school system, the student population continually declined, the property tax was frozen, and federal funds were constricted. Under these combined pressures, the school system was forced to reduce its teaching and administrative staff, including its staff of psychometrists. In May 1981, Dr. William Anthis, the superintendent of the school system, met with the psychometrists, including Stewart, to notify them of the impending reductions in force. Dr. Anthis advised them that as the administrative staff was reduced, those remaining would need to be able to wear a variety of professional hats. He indicated that an employee who held multiple certifications from the state would have a better chance of being retained than an employee who held only one certificate. Stewart held only one certificate, but she began to take classes toward her classroom teaching certificate. In the fall of 1981 and the summer of 1982, she took a total of twenty-four hours of classes toward her classroom teaching certificate, but she stopped more than thirty hours short.

Preparing for reductions in personnel, in November 1981 the school board decided to combine the previously separate positions of psychometrist and guidance counselor. Under state law, guidance counselors were required to have both a classroom teaching certificate and a guidance counselor certificate. The school board acknowledged in its 1981 employment policy that "[i]n some situations it may be necessary to give a ... Psychometrist a period of time to fully meet the certification requirements of the position to which he/she is assigned." Those who were to be retained but who were still working toward a required certification would hold the title of "acting psychometrist/counselor." Stewart was not certified as a classroom teacher or as a counselor.

During November 1981, a committee interviewed all psychometrists and counselors to determine who should remain in the reduced number of combined psychometrist/counselor positions. The committee considered four factors: the number of certificates held by the applicant, the applicant's interest, seniority, and other qualifications. Stewart, of course, held only one certificate. In addition, the committee members felt that Stewart had not exhibited much interest in pursuing her counselor certificate. They noted, for example, that she had responded ambivalently to a questionnaire regarding her preferred future assignments.

On March 22, 1982, Stewart was notified that she would be laid off at the end of the school year along with six other employees. Of those being retained in the acting psychometrist/counselor position, two were non-tenured psychometrists who held both psychometrist and teaching certificates but did not hold counselor certificates. Stewart complained to Superintendent Anthis in writing:

> In my interview with the committee, I was asked for an instantaneous committment [sic] of intent to seek additional certification in counseling. Since such a committment [sic] would mean a definite change in lifestyle and career goals, this kind of instantaneous ultimatum seems an unfair labor practice. Indeed, to even call this an interview when one is already

employed seems facetious and an intent to escape fair labor practice.

Record at 137.

Because the board had failed to notify Stewart that a state statute afforded her the right to a pre-termination hearing,[1] it decided to reinstate her for the 1982–83 school year as a psychometrist. Apparently by virtue of this rehire, Stewart obtained tenure. It is her status as a tenured teacher that now serves as the legal predicate for this lawsuit.

During the next school year, deputy school superintendent Dr. James Robbins notified Stewart by letter that the continuing decline in student enrollment necessitated further cutbacks in administrative personnel. Dr. Robbins' letter noted that the school system needed employees with dual certifications, that Stewart had only a psychometrist certificate, and that Stewart had less seniority than any other psychometrist with a single certificate. Dr. Robbins concluded his letter to Stewart by stating that the superintendent was recommending to the school board that her contract be cancelled at the end of the school year. His letter also informed her that she could contest the superintendent's recommendation by requesting a hearing with the school board.

Stewart did request a hearing, and one was held on March 14, 1983. At this hearing, the superintendent presented the reasons for his recommendation, and Stewart was given an opportunity to respond and present evidence. On March 28, 1983, the school board released its findings and conclusions. It decided that Stewart's contract should be cancelled, effective June 17, 1983.

Stewart sued the school system in the Whitley Circuit Court. Although Stewart's original complaint was not made a part of the record on appeal, it appears she claimed a right to reinstatement and back pay based on violations of Indiana's teacher tenure law, Ind.Code § 20–6.1–4–10 (West 1984), and 42 U.S.C. § 1983 (1988). Following a bench trial, the trial court found for

the school system. Stewart appealed, and the Court of Appeals reversed on both counts. *Stewart v. Fort Wayne Community Schools* (1989), Ind.App., 545 N.E.2d 7.

Because this Court has not addressed directly the legal issues presented by the discharge of tenured teachers in Indiana since *State ex rel. Thurston v. School City of Anderson* (1957), 236 Ind. 649, 142 N.E.2d 914, we grant transfer. We affirm the trial court's decision in favor of the school system.

This case presents two issues:

I. Whether the school system's decision to discharge Stewart and retain non-tenured personnel violated Stewart's rights under state law.

II. Whether the school system's decision to discharge Stewart constituted an arbitrary and capricious deprivation of a protected property interest in violation of her federal constitutional right to substantive due process and, thus, in violation of her rights under 42 U.S.C. § 1983.

I. *Stewart's State Law Claims*

Stewart's claims under state law essentially fall into two categories. First, she alleges the school system violated the teacher tenure law, as that law was interpreted in *Watson v. Burnett* (1939), 216 Ind. 216, 23 N.E.2d 420. Second, she alleges that the school board's decision was arbitrary and capricious and not based on the evidence before it.

The teaching profession in this state has long enjoyed statutory protection. Since the enactment of the teacher tenure law in 1927, now codified at Ind.Code §§ 20–6.1–4–1 to –20 (West 1984 & Supp.1990), the Indiana legislature has provided experienced teachers with a legal shield that protects them from unjustified dismissals. Under this law, teachers attain tenure status after their fifth year of teaching. Ind.Code § 20–6.1–4–9. Once tenured, a teacher may be discharged only for a limited number of statutorily enumerated reasons. Ind.Code § 20–6.1–4–10. One of these is a

1. Ind.Code § 20–6.1–4–11 (West 1984).

"justifiable decrease in the number of teaching positions." Ind.Code § 20–6.1–4–10(a)(5). The law also prescribes procedures which must be followed before a tenured teacher can be discharged. Ind.Code § 20–6.1–4–11. Stewart does not claim that any procedural requirements were ignored by the board, but she does contend that the board's decision to discharge her as part of a reduction in force was illegal under the teacher tenure law and was not supported by the evidence.

Although the teacher tenure law erects many safeguards for tenured teachers, the law does not prescribe the standard by which courts are to review a school board's decision to discharge tenured personnel. While errors of law are readily discerned and resolved by courts, this statutory silence has generated much confusion about the appropriate analysis applicable to evidentiary error by boards. For example, both petitioner and respondent have assumed that the standard was enunciated in *Metropolitan School District of Martinsville v. Mason* (1983), Ind.App., 451 N.E.2d 349. In that case, the Court of Appeals considered whether a school board's decision to withhold a school bus contract from the sole bidder on grounds the bid was too high was either "arbitrary, capricious" or "unsupported by substantial evidence." *Id.* at 353. This two-pronged inquiry into the factual support for the decision was gleaned from Indiana's Administrative Adjudication Act. Ind.Code § 4–21.5–5–14(d) (West Supp.1990) (previously codified at Ind.Code § 4–22–1–18).[2] The Administrative Adjudication Act, however, does not control local school board decision-making. *See, e.g.,* Ind.Code § 4–21.5–1–3 (West Supp.1990) (act does not apply to agency of a political subdivision of the state); and

*Tippecanoe Valley School Corp. v. Leachman* (1970), 147 Ind.App. 443, 261 N.E.2d 880 (local school board exempt from the act's requirements because it is not a statewide agency). All in all, there seems to be little reason to ask both whether a school board's decision is "arbitrary and capricious" and whether it is "unsupported by substantial evidence." Whatever differences exist between the two tests create more confusion than they are worth.[3]

█ Instead, we hold that the "substantial evidence" standard should be applied when reviewing the *evidentiary* support behind a school board's decision. This standard is, perhaps, the oldest standard of review of administrative agency decisions and is today the most commonly utilized one. *See* 5 K. Davis, *Administrative Law Treatise* § 29:5 at 350–51 (2d ed. 1984) ("substantial evidence" test first applied to administrative agency decisions by the U.S. Supreme Court in 1913 and subsequently adopted by Congress as the standard of review under the National Labor Relations Act and the Fair Labor Standards Act). The "substantial evidence" test was set out by this Court in the related cases of *Stiver v. State ex rel. Kent* (1936), 211 Ind. 370, 1 N.E.2d 592, and *Stiver v. State ex rel. Kent* (1936), 211 Ind. 380, 1 N.E.2d 1006. In the second *Stiver* opinion, we capsulized the standard as follows: "If the procedural requirements are followed, including the assignment of a legal cause for cancellation [of the contract], and if there is substantial evidence presented which tends to support the legal cause, and if the hearing is, in fact, fair, the proceeding is lawful." 1 N.E.2d at 1007.

---

**2.** Although *Mason* did not directly cite to the Administrative Adjudication Act, it did cite to other administrative law cases that involved the act. 451 N.E.2d at 353 (citing to *Natural Resources Commission v. Sullivan,* 428 N.E.2d 92, 97 (Ind.App.1981) (stating the act's standard of judicial review of administrative decisions)).

**3.** The leading scholar on administrative law, Professor Kenneth Culp Davis, has stated that no other area of administrative law is in more need of general reform than the common law of

the state courts concerning standards of judicial review. K. Davis, *Administrative Law Text* § 24.01 at 458 (West 3d ed. 1972). Davis noted in his most recent treatise on the subject that the best way to reform this area of the law would be to simplify the standards. "Everyone ... should learn from the experience of the past quarter of a century that refining the verbalisms about scope of review is not merely unprofitable but harmful." 5 K. Davis, *Administrative Law Treatise* § 29:7 at 363 (2d ed. 1984).

Under the substantial evidence standard, the reviewing court must consider the record *as a whole*, not just the evidence that is favorable to the school board's decision. A court may vacate a school board's decision only if the evidence, when viewed as a whole, demonstrates that the conclusions reached by the school board are clearly erroneous. With this standard of review established, we turn to Stewart's state law claims: first, that the board's decision violated the tenure act, and second, that the board's decision was not supported by the evidence.

### A. Stewart's Teacher Tenure Rights

Arguing that the school board's actions were contrary to the teacher tenure law, Stewart relies on *Watson v. Burnett* (1939), 216 Ind. 216, 23 N.E.2d 420. That case presented an early opportunity to explore the reach of the teacher tenure law's protections. Julia Burnett was a tenured teacher licensed to teach only in grades one through four. She was fired as the result of a reduction in force. Although the law permitted a school to discharge a tenured teacher in that situation, Burnett complained that non-tenured teachers had been retained to teach classes she was also certified to teach. She argued that if the law's purpose were to be fully realized, tenured teachers had to be given priority over equally qualified non-tenured teachers during reductions in force. This Court agreed, and ordered the school board to reinstate her.

Relying on the teacher tenure law and the *Watson* decision, Stewart argues that because both she and the two non-tenured teachers lacked a counselor's certificate (one of the two certificates required by state law for the guidance counselor position), she was as "qualified" as they were to hold the title "acting psychometrist/counselor." As the only tenured teacher among these three "equals," Stewart claims the teacher tenure law requires her to have been retained. Her argument is unpersuasive.

Indiana Code § 20-6.1-4-10 and our decision in *Watson* protect Stewart from being fired before non-tenured teachers due to a reduction in force only as long as her qualifications make her eligible for the job she seeks. *Watson* emphasized that a tenured teacher must still be "qualified to teach in the position for which the non-tenured teacher is retained." 216 Ind. at 221, 23 N.E.2d at 423. This prerequisite is reinforced by regulations of the Indiana Department of Education, which require that school personnel, including guidance counselors, be properly certified in their field. Ind.Admin.Code tit. 511, r. 4-1-3 (1988). Stewart's own brief to the Court of Appeals concedes that she was unqualified under state law to work as a counselor. Brief at 23-24.

Our decision in *Watson* bestowed a powerful sword on tenured teachers, and Stewart naturally seeks to use it in her favor. That sword, however, was designed to enforce the teacher tenure law. It cuts only in favor of the primary legislative intent behind that act—the promotion of the public good through the creation of a competent cadre of teachers in the state. The law is primarily intended to "promote ... the welfare of the state and of the school system by preventing the removal of capable and experienced teachers at the political or personal whim of changing officeholders." *State ex rel. Anderson v. Brand* (1937), 214 Ind. 347, 351, 5 N.E.2d 531, 532, *rev'd on other grounds sub nom. Indiana ex rel. Anderson v. Brand*, 303 U.S. 95, 58 S.Ct. 443, 82 L.Ed. 685 (1938); *see also School City of Lafayette v. Highley* (1938), 213 Ind. 369, 376-77, 12 N.E.2d 927, 930 (purpose of the act is to protect the educational interest of the state, not to grant special privileges to any class of teachers); *accord* Note, *Dismissal or Removal of Public School Teachers Under Teachers' Tenure Laws*, 21 Notre Dame L.Rev. 25, 26-27 (1945). The sword may not be used by a teacher to litigate her way into a position that she is unqualified to hold under state law. *Cf. Switzerland County School Corp. v. Sartori* (1982), Ind.App., 442 N.E.2d 702 (rejecting teacher's suit seeking enforcement of contract with school system on grounds that contract was void because teacher lacked cer-

tificate to teach in Indiana). Stewart does not qualify for relief under the rule of *Watson v. Burnett,* which rule requires the tenured teacher to be as well qualified as the non-tenured teacher who was retained. The trial court correctly held that Ind.Code § 20–6.1–4–10 had not been violated by the school system.

### B. *Stewart's "Substantial Evidence" Argument*

■ Stewart's second state law claim is that the school board's decision is not supported by the evidence before it. After reviewing the record, we hold that the board's decision in this case was not clearly erroneous.

Facing a declining student population and dwindling financial resources, the school system was forced to reduce its teaching and administrative staff. These reductions were complicated by a variety of pressures. First, many of the teachers, like Stewart, had tenure rights that had to be accommodated. Second, the State of Indiana prescribed minimum educational standards that further limited the board's flexibility. Third, the private accreditation system prescribed additional minimum standards that had to be met if the school system was to retain its accreditation. The board decided that it could reduce its staff and still satisfy these pressures by combining the positions of psychometrist and guidance counselor. In combining these positions, however, the school board was forced to choose between Stewart and two non-tenured psychometrists. Both of the non-tenured employees already had classroom teaching certificates that enabled them to teach a class or two should the need arise. Stewart was not certified to teach in the classroom. Had she been retained, the board would have had to look elsewhere for a certified classroom teacher. Moreover, both of the non-tenured psychometrists were closer to being certified as guidance counselors, and they exhibited greater willingness to pursue the certifica-

tion. Considering these factors along with the rest of the record, the school board's decision to retain the non-tenured psychometrists over Stewart was quite a reasonable choice. The board's decision survives the substantial evidence test.

### II. *Stewart's § 1983 Claim*

Section 1983 of Title 42 [4] was originally enacted as § 1 of the "Ku Klux Klan Act of 1871." That act was the federal government's reaction to an alarming increase in racist violence in the South during Reconstruction. Although originally intended as a means of gaining federal control over state officials who failed to stop acts of violence against blacks and Northern sympathizers (particularly acts committed by the Klan), § 1983 has today developed into the primary civil means to remedy violations of the federal Constitution. 2 R. Rotunda, J. Nowak & J. Young, *Treatise on Constitutional Law: Substance and Procedure* § 19.13, at 762 (1986). State courts may exercise concurrent jurisdiction over § 1983 claims. *Maine v. Thiboutot,* 448 U.S. 1, 3 n. 1, 100 S.Ct. 2502, 2503 n. 1, 65 L.Ed.2d 555, 558 n. 1 (1980).

■ To make out a § 1983 claim, a plaintiff must establish that a deprivation of rights, privileges, or immunities secured by the United States Constitution or federal law resulted from conduct occurring under the color of state law. Here, Stewart claims that the school board's decision to fire her constituted conduct under color of state law that violated her constitutional right to substantive due process. The only question that has been raised on appeal is whether the school board's action deprived her of such a federal constitutional right. We hold that it did not.

Substantive due process prohibits state action which deprives one of life, liberty or property without a rational basis for the deprivation. Where the basis for such state action is so lacking as to make it

---

**4.** "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
42 U.S.C. § 1983 (1988).

"arbitrary and capricious," courts will invalidate the action as violating substantive due process. Stewart claims that the school board's decision to fire her was arbitrary and capricious, and deprived her of a property interest in her job.

Although due process is a constitutional right, its application to this case hinges on whether our state law grants Stewart a protectable property interest in her job. The United States Supreme Court has said:

> To have a property interest in a benefit [such as a job] a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

In *Speckman v. City of Indianapolis* (1989), Ind., 540 N.E.2d 1189, this Court discussed the extent of a public employee's property interest in his job within the context of procedural due process. We held that a city park director would have a protectable property interest in his job if he could show an entitlement to continued employment. Entitlement to a public job can arise from contract or state law. *City of Mishawaka v. Stewart* (1974), 261 Ind. 670, 310 N.E.2d 65.

In this case, Stewart does not have a contractual claim to continued employment beyond the 1982–83 school year. Her last contract with the school system was for only one year, and expired on June 17, 1983. However, we believe that her statutory status as a tenured teacher does vest in her a property interest in her job that entitles her to the protections afforded by substantive due process. We have previously held that similar tenure statutes vested other public employees with protected property interests in their jobs. *See State ex rel. Felthoff v. Richards* (1932), 203 Ind. 637, 180 N.E. 596 (tenure statute confers on policeman a protectable interest in his job), and *City of Mishawaka v. Stewart*, 261 Ind. at 676, 310 N.E.2d at 68 (applying *Felthoff* to firemen). Both of these cases

noted that tenure statutes were intended to encourage the creation of an apolitical, merit-based work force in vital areas of government service. Because the teacher tenure act was passed with this same purpose in mind, it ought to confer on a teacher an equally secure property interest.

Because Stewart has a property interest in her job, the United States Constitution protects her from being deprived of her job for arbitrary and capricious reasons. She claims that the school board's decision was arbitrary and capricious for two reasons— it violated Indiana's teacher tenure law and the school board's own employment policies. We have already rejected the first possibility. *See supra* part I(B). As explained below, we also reject the second.

■ Stewart argues that the school board's decision violated its January 1983 employment policy in two ways. First, Stewart claims that the school board improperly applied the dual certification requirement contained in the old 1981 employment policy when it decided to terminate her. She argues this was improper because the dual certification requirement was officially rescinded by the 1983 policy. This argument is without merit. Stewart's attorney did not argue at the school board hearing in March 1983 that the dual certification requirement had been rescinded by the 1983 policy, nor did he try to enter the 1983 policy into evidence at that school board hearing. Although the 1983 policy did rescind the formal 1981 policy statement, it is clear that the board's interest in having personnel with dual certifications survived. The 1983 policy, itself, did not expressly rescind the dual certification requirement. On the contrary, the dual certification requirement took on a life of its own, outside of the confines of the formal 1981 policy statement. The formal 1981 policy was not the only way Stewart had heard about the importance of having dual certifications. Dr. Anthis also informed the psychometrists in 1981 that the school system was beginning a belt-tightening period, and that employees with dual certifications had the best chance of being retained. Moreover, Stewart has never ar-

gued that she stopped working on her classroom teaching certificate because of her belief that the dual certification requirement had been rescinded by the 1983 policy. Indeed, Stewart stopped working on her second certificate after the summer of 1982—six months before the 1983 policy was even announced.

■ Second, Stewart argues that the school board ignored its 1983 policy by failing to cite the policy in its findings. We do not believe that the 1983 policy was ignored by the school board. The 1983 policy enunciated only a very general standard which left the board with a large degree of discretion. It stated only that the reductions in administrative staff would occur in a "manner that is fair and equitable after the qualifications of the individuals potentially involved have been reviewed." Record at 270. Although not reproduced verbatim in the board's findings, this standard was fully met. Stewart was permitted to present her qualifications to the board during her hearing. In light of all the evidence presented to the board, including the evidence that was adverse to Stewart's case, the board's decision was "fair and equitable," and thus in full compliance with its 1983 employment policy.

Because the school board's decision to terminate Stewart did not violate either state law or its own employment policy, it was not arbitrary and capricious. Without an arbitrary and capricious government decision to support her substantive due process claim, Stewart's derivative § 1983 claim fails. The trial court was correct in finding for the school system on this claim.

The trial court is affirmed.

DeBRULER, GIVAN, DICKSON and KRAHULIK, JJ., concur.