765 N.E.2d 632 (2002)
The PLAN COMMISSION FOR FLOYD COUNTY, INDIANA and its members, Judy Arthur, Roy Ballard, Thomas Boofter, Brad Curry, William Fender, III, Evan Frieberger, Greg Gapsis, John Reisert, Brian Sieg, and each of the following individuals: Judy Arthur, Roy Ballard, Thomas Boofter, Brad Curry, William Fender, III, Evan Frieberger, Greg Gapsis, Brian Sieg, Appellants-Respondents,
v.
Steven E. KLEIN, Appellee-Petitioner.
No. 22A01-0106-CV-204.
Court of Appeals of Indiana.
March 27, 2002.
*634 Barry N. Bitzegaio, New Albany, IN, Attorney for Appellants.
John A. Kraft, Young, Lind, Endres & Kraft, Attorney for Appellee.

*633 OPINION
BAILEY, Judge.

Case Summary
The Plan Commission for Floyd County, as well as some of the Plan Commission's members in their individual and official capacities (collectively, "the Plan Commission"), appeal the trial court's judgment in favor of appellant Steven E. Klein ("Klein") on his requested writ of certiorari for judicial review of the Plan Commission's rejection of Klein's request for approval *635 to subdivide property in Floyd County, Indiana. We conclude that the Plan Commission's appeal is moot, but we address the issues raised.

Issues
The Plan Commission raises several issues, which we consolidate and restate as whether the trial court properly reversed the Plan Commission's decision to reject Klein's request for preliminary approval of the planned subdivision. To reach this question, however, we must first address Klein's motion to dismiss this appeal on the ground that it is moot.

Facts and Procedural History
In March of 2000, Klein filed an application with the Plan Commission seeking preliminary approval for his proposed subdivision of approximately 83 acres in Floyd County, Indiana, to be known as "Baumann's Bluff." A copy of the preliminary plat provided to the Plan Commission indicates that Klein intended to subdivide the area into 69 lots ranging in size from one-half acre to five acres.[1] The Plan Commission took the matter up at its April 17, 2000 meeting. Beverly Smith, the Plan Commission's Plan Director, advised the Plan Commission that "she had checked out just about everything" regarding Klein's application, and it appears that the Plan Commission's checklist of items to be included on plat diagrams had been completed. Smith identified no items of Klein's proposal that were inconsistent with the Floyd County subdivision control ordinance, but stated that she would procure a soil and water assessment for the property. The Plan Commission indicated that it would hold a subdivision committee meeting on April 24, 2000 to further consider Klein's application. The subdivision committee's comments were to be put in writing and submitted to Klein for consideration.
There is no record of the subdivision committee's meeting, and no indication that a meeting occurred. A few of the members of the Plan Commission, however, made written comments in late April 2000, which reflected the concerns that the subdivision contained too many lots, and that the proposed use of individual septic systems might be inappropriate for the area. On May 5, 2000, Plan Director Smith advised the engineering and surveying firm apparently working with Klein on the project that all of the comments of the Subdivision Subcommittee had been faxed to the firm, and that a public hearing on Klein's application had been set for May 15, 2000.
On May 12, 2000, Allen Pursell, identified as a Registered Forester, issued an environmental assessment report regarding the environmental impact of the proposed subdivision. According to the report, the development did not present a "significant local impact to the environment." (Appellants' App. 175.) Nevertheless, the report recommended that a conservation easement apply to several of the lots, and that certain lots be combined. In response to the comments of the Subdivision *636 Subcommittee and to the environmental assessment, Klein amended his proposed plat by reducing the number of lots from 69 to 57, which increased the average lot size from approximately 1.19 acres to approximately 1.44 acres, and subjected a number of lots to conservancy easements. In addition, on May 12, 2000, the Floyd County Health Department advised that its soil analysis revealed that the soil in the area would be sufficient for some types of septic systems, with different types of systems appropriate for different parts of the subdivision. The Health Department advised that it would consider requests to use septic systems in the subdivision on a lot by lot basis, and that each individual lot would undergo a separate soil analysis to determine which type of septic system permits would be appropriate.
The Plan Commission took up Klein's application again at its May 15, 2000 meeting. Members of the Commission raised several concerns, which were discussed at length. For example, Klein was asked to confirm that water pressure entering the subdivision would be sufficient. Klein advised that he had arranged with the local water company to upgrade the incoming water lines, and that the water company had assured that the pressure would be sufficient. Klein was also asked to address safety issues regarding the entrance to the subdivision. Klein confirmed that he agreed to employ necessary sight easements, and to widen the road and install guardrails as necessary. Klein was also asked about emergency services, and confirmed that the area would be served by both the New Albany Township Fire Department and the Lafayette Township Volunteer Fire Department. Although Klein apparently addressed all of the concerns raised by the Plan Commission, and despite the fact that the Plan Commission did not identify any element of the Floyd County subdivision control ordinance implicated by Klein's proposal, the Commission voted to table the matter until the Commission's next scheduled meeting so that Klein could further address additional issues regarding road capacity, water supply, "class rating fire protection," and "low density."
The Plan Commission revisited Klein's application at its next meeting on June 19, 2000.[2] It appears that Klein addressed the matters upon which the Plan Commission sought clarification at the close of the previous meeting, and there is no indication in the Commission's minutes or anywhere else in the record that the Commission was unsatisfied with those matters. Klein had again altered his proposal to accommodate the Plan Commission's concerns, reducing the number of proposed lots from 57 to 56. Klein, through counsel, took the position that the Plan Commission should approve the application because the requirements of the county subdivision control ordinance had been satisfied and matters listed on the Plan Commission's checklists had been addressed. The Plan Commission disagreed, and adopted the following findings of fact as set forth in the minutes of the meeting:
Mr. Sieg [a member of the Commission] read his motion as follows: 1. The *637 site considered is not appropriate for the use proposed. 2. The services to be offered may be needed in the community. 3. Law Enforcement and Fire Protection may be inadequate to service the proposed use. 4. Traffic congestion and safety will suffer serious detrimental effects. 5. The use will detrimentally effect [sic] the health, safety, and welfare of the community. 6. The use may adversely effect [sic] or devaluate [sic] neighboring property. 7. The Staff Report should be adopted as part of the Findings of Fact. With Mr. Gapsis' additions. Mr. Gapsis [another Commission member] read his additions as follows: The proposed Density non conforms [sic] with local uses so much to constitute spot zoning, specific requirements under existing County Ordinances both from 1968 and 1999 have not been met or are absent, certain intra structure [sic] in place to support this may not be legally sufficient under current County Ordinances to support such a land use proposal, Soil and Slope data submitted by both the Soil and Water Conservation District indicates severe to moderate limitations for all constructions including the installation of septic systems on the site which again affect the scope of the proposal, and similarly data supplied by the Environmental Assessment presented by the applicant indicates an accumulative and permanent negative impact which has not been addressed in the existing design, existing proposal, Right of way, passing blisters, reserves for future expansions, entrances all those elements under current ordinances meant to be referred to as those requirements that may be limited for the proposal before us.
(Appellee's App. 19.) After adopting these findings, the Plan Commission tabled Klein's application for approval so that the Commission's attorney could evaluate whether the Commission's findings were adequate to withstand judicial review. At its next meeting on July 17, 2000, the Plan Commission advised counsel for Klein that the Commission had obtained an opinion regarding the sufficiency of the findings adopted at its previous meeting. While the minutes of the meeting do not reflect the substance of that opinion, it appears that the Planning Commission was satisfied that the findings were adequate, for it denied Klein's application without further discussion. On July 28, 2000, Klein filed a Petition for a Writ of Certiorari, seeking judicial review of the Plan Commission's denial of the subdivision application, as well as a Petition for a Writ of Mandamus, asking the trial court to direct the Plan Commission to approve Klein's application. Klein's petition specifically asked the court to instruct the Plan Commission to produce its records regarding Klein's application, as well as a copy of the Floyd County subdivision control ordinance. Klein's petition also contained counts alleging that the Plan Commission violated Indiana's Open Door Law, Indiana Code sections 5-14-1.5-1 through -7; that the Commission's action violated 42 U.S.C. 1983; that the Plan Commission's decision illegally exceeded its authority; and that the Commission's denial of Klein's application constituted the unconstitutional taking of Klein's property without compensation.
On August 14, 2000, the trial court issued its Writ of Certiorari to the Plan Commission, directing the Commission to return the writ with a variety of materials relating to the Commission's decision, including a complete record of the Commission's proceedings. While the court's Writ did not specifically mention the Floyd County subdivision control ordinance, the court directed the Commission to produce written rules and policies regarding the *638 approval and denial of subdivision proposals. The Plan Commission responded by providing a certified copy of its file, containing minutes of the Commission's meetings as well as correspondence and reports regarding Klein's proposed project. The Plan Commission's file, however, did not contain a copy of the Floyd County subdivision control ordinance.
The trial court heard Klein's petition on November 3, 2000. At the outset of the hearing, Klein's counsel advised the court as follows:
Additionally, Your Honor, in doing the preparation and reviewing the writ that has been returned by the Floyd County Plan Commission, there was an omission of one item within the writ itself and that is the Subdivision Control Ordinance of 68-1 which should have been part of the Record. I've spoken with Mr. Rush [counsel for the Plan Commission] and Mr. Rush recognizes that that was not part of the Record and has indicated that he will in fact stipulate that that should be and will beone of us will submit the Court a copy of 68-1 Subdivision Control Ordinance in order for proper consideration since it should have been part of the Record.
(Tr. 3.) Counsel for the Plan Commission made no objection to this representation. Toward the end of the proceeding, the trial judge stated, "I do need to see the subdivision control ordinance." (Tr. 37.) Klein's counsel told the judge that a copy could be made immediately following the hearing. The Plan Commission's attorney had no objection to this procedure, and apparently provided the trial court with a copy of the subdivision control ordinance during an in-chambers pre-trial conference shortly after the hearing.
The trial court issued its Findings of Fact, Conclusions of Law and Judgment on December 5, 2000. The court initially noted that Klein had asked for permission to supplement the materials submitted to the court by the Plan Commission with the county subdivision control ordinance, and that the parties had stipulated to the filing of the ordinance. The trial court found that Klein had satisfied all of the requirements set forth in the county subdivision control ordinance necessary for Plan Commission's conditional approval of his project, and accordingly concluded that the commission improperly denied Klein's application. The court therefore reversed the Plan Commission's decision and entered judgment in Klein's favor by granting Klein's application for conditional approval.[3] The court further instructed the Plan Commission that any request by Klein for final approval of the project should be governed only by the standards set out in the subdivision control ordinance, and that if Klein's request for final approval met those standards, it should be granted.
Klein apparently presented his request for final approval of the project to the Plan Commission at the Commission's December 18, 2000 meeting. (Exhibit 1 to Exhibit A of Appellee's Motion for Leave to File Verified Motion to Dismiss Appeal.) The Plan Commission reviewed the court's instructions regarding final approval and granted Klein's request. Despite this grant of approval, the Plan Commission promptly attempted to initiate an appeal, *639 which was subsequently dismissed by this Court for failure to file a record, and later filed a Motion to Reconsider on March 30, 2001, asking the trial court to either remand the matter to the Commission for the entry of written findings of fact, to dismiss Klein's action for failure of proof pursuant to Trial Rule 41(B), or to confirm that the trial court's judgment was final and appealable pursuant to Trial Rule 54(B). The trial court heard the motion on April 24, 2001, and subsequently denied the requested relief of remand or dismissal. The trial court, however, issued an order on April 30, 2001, providing that its December 5, 2000 judgment was final and appealable, and the Plan Commission commenced this appeal.
On June 19, 2001, after the Plan Commission initiated this appeal, the Floyd County Commissioners met and considered Klein's request that the County Commissioners sign the final plat for the subdivision, the significance of which action is not entirely clear, but which may represent the county's approval and acceptance of the streets within the subdivision as part of the county's road system. The minutes of the meeting indicate that the Commissioners discussed the Plan Commission's December 18, 2000 final approval of the project, as well as the course of the litigation between Klein and the Plan Commission, including the appeal pending in this Court. Following this discussion, the County Commissioners approved the plat for the subdivision. (Exhibit 2 to Exhibit A of Appellee's Motion for Leave to File Verified Motion to Dismiss Appeal.)
On June 27, 2001, Klein filed a motion in this Court to dismiss the Plan Commission's appeal, arguing in part that the appeal was moot because the Plan Commission had granted final approval to the subdivision plan on December 18, 2000, and that the Floyd County Commissioners had given their approval to the project on June 19, 2001. The Plan Commission responded by noting that neither the record nor Klein's motion to dismiss contained evidence regarding the Plan Commission's December 18, 2000 meeting or the Floyd County Commissioners' June 19, 2001 meeting,[4] and argued that even if such evidence had been presented for review, Indiana case law did not support Klein's position. This Court denied Klein's motion on August 10, 2001.
The Plan Commission filed its Brief of Appellants on September 21, 2001, arguing in part that the trial court's decision was erroneous because the Floyd County subdivision control ordinance had never been admitted into evidence during the November 3, 2000 hearing on Klein's petition, and asserting that the ordinance was therefore not part of the record on appeal. On October 19, 2001, Klein filed a Motion to Correct or Modify Clerk's Record with the trial court pursuant to Indiana Appellate Rules 32(A)[5] and 34(F)[6], asking the trial *640 court to modify the record on appeal to include the Floyd County subdivision control ordinance, as well as missing pages from the minutes of the Plan Commission's June 19, 2000 meeting. The trial court granted this motion on October 22, 2001. The Plan Commission moved the trial court to vacate its order correcting and modifying the record on November 2, 2001. The trial court does not appear to have acted on the motion, and on November 9, 2001, the Plan Commission filed its own Motion to Correct Record with this Court, essentially asking us to strike the county subdivision control ordinance and the missing pages from minutes of the Plan Commission's June 19, 2000 meeting from the record. We have not yet ruled on what we take to be the Plan Commission's motion to strike.
Most recently, Klein filed a Motion for Leave to File Verified Motion to Dismiss Appeal on November 16, 2001. Attached was a renewed motion to dismiss the Plan Commission's appeal on the ground that the controversy is moot by virtue of the Plan Commission's grant of final approval of the project on December 18, 2000, and the Floyd County Commissioners' approval of the subdivision plat on June 19, 2001. In addition, Klein attached a copy of what appear to be the minutes of the Plan Commission's December 18, 2000 meeting accompanied by a certification by the Plan Commission's Plan Director as to the accuracy of the minutes, as well as a copy of minutes from the Floyd County Commissioners' June 19, 2001 meeting. On February 13, 2002, we granted Klein's motion for leave to file his latest motion to dismiss, and the Plan Commission filed its response on February 26, 2002. We address Klein's motion and the Plan Commission's response below.

Discussion and Decision

A. The Subdivision Application and Review Process
Pursuant to Indiana Code section 36-7-4-701(b), the relevant legislative body in an area (typically the county commissioners) must adopt an ordinance, proposed by the local plan commission, to control the subdivision of land. Once the measure has been adopted, the local plan commission has exclusive control over the approval of all plats involving the land covered by the ordinance. IND.CODE § 36-7-4-701(c). The ordinance must contain specific standards by which the plan commission can determine whether the plat qualifies for approval. IND.CODE § 36-7-4-702(b). These standards may address a variety of factors, but must address the minimum width, depth, and area of lots in the subdivision; the width, grade, and curves of streets in the subdivision and the coordination of those streets with other existing or planned streets; and the extension of water, sewer, and other municipal services. IND.CODE § 36-7-4-701(b).
The provisions in the Indiana Code governing the subdivision of land contemplate a two-stage approval process consisting of primary and secondary approval. A person who desires to subdivide land must submit a written application for primary approval of the proposed plat to the local plan commission. IND.CODE § 36-7-4-703. *641 After the application is submitted, the plan commission is to set the matter for hearing. IND.CODE § 36-7-4-705 and -706. In considering an application for primary approval, the plan commission is limited to determining whether the specific requirements set out in the subdivision control ordinance have been met. Plan Comm'n of Harrison County v. Aulbach, 748 N.E.2d 926, 936 (Ind.Ct.App. 2001), reh'g denied. If the requirements in the ordinance have been met, the plan commission must approve the plat. Id. A plan commission's role in this regard is purely ministerial, and the commission has no discretion to deny an application that meets the requirements of the applicable subdivision control ordinance. Id. The plan commission's primary approval of an application must be accompanied by written findings. IND.CODE § 36-7-4-707(a).
Similarly, the commission's determination that primary approval should not be granted on the ground that the requirements set out in the subdivision control ordinance have not been met must be memorialized in a written decision containing findings explaining the commission's reasons for disapproval. IND.CODE § 36-7-4-707(b). The commission must provide these findings to the developer at the first opportunity, and the findings must contain a complete list of all the specific and concrete reasons the proposed plat fails to comport with the standards set out in the ordinance, so that the developer may amend its plat to comply with the ordinance. Aulbach, 748 N.E.2d at 936. All of the asserted defects in a plat must be identified at one time, and a plan commission may not raise asserted defects in a piecemeal fashion. Tippecanoe County Area Plan Comm'n v. Sheffield Developers, 181 Ind.App. 586, 394 N.E.2d 176, 185 (1979). Thus, if a plan commission fails to apprise a developer of asserted defects in a plat following a hearing, the commission may be estopped from denying an application for plat approval on the basis of those asserted defects following a subsequent hearing. See Equicor Development, Inc. v. Westfield-Washington Township Plan Comm'n, 758 N.E.2d 34, 40 (Ind.2001) (holding that plan commission was estopped from raising asserted defect following hearing when defect was not raised following earlier hearing, because developer detrimentally relied upon plan commission's failure to identify defect in a timely manner); Sheffield, 394 N.E.2d 176, 185 (same).
The plan commission's primary approval or disapproval of a plat application is subject to review by certiorari, and a person aggrieved by the commission's decision may file a petition for a writ of certiorari in the local circuit or superior court requesting judicial review of the commission's decision. IND.CODE § 36-7-4-1003. If the commission does not show cause in opposition, the trial court will issue the commission a writ, in response to which the commission must provide information and documents pertinent to its decision, including materials specifically requested in the writ. IND.CODE § 36-7-4-1006 and -1008. While the issuance of a writ does not effect a stay of proceedings or of any work on the property in question, the court may, upon motion, grant an order staying the proceedings or work. IND. CODE § 36-7-4-1007. In reviewing the commission's decision, the trial court may assess the petitioner's allegations of illegality solely on the basis of the facts disclosed in the return to the writ of certiorari. IND.CODE § 36-7-4-1009. The court may supplement that evidence by hearing testimony, but the court may not conduct a trial de novo. Id. The trial court may either affirm, reverse, or modify the decision of the plan commission. Id.
*642 The Plan Commission may grant secondary, or final, approval of a subdivision plat without further notice or hearing once the time to petition for judicial review of the commission's grant of primary approval has expired. IND.CODE § 36-7-4-710. A person may not file a subdivision plat with the county auditor, and the plat may not be recorded, until secondary approval has been granted and the plat has been signed and certified by the official designated in the subdivision control ordinance. Id.

B. Standard of Review
The trial court's final judgment affirming, reversing, or modifying the decision of the plan commission is appealable like any other civil matter. IND.CODE § 36-7-4-1011. Here, the Plan Commission appeals the trial court's reversal of the Commission's rejection of Klein's application for primary approval of his subdivision plat. We recently enunciated the proper standard of review in cases like this as follows:
"When an aggrieved party seeks relief in a trial court from an adverse administrative determination and attacks the evidentiary support of the board's findings, he bears the burden of demonstrating that the board's conclusions are `clearly erroneous.'" Town of Beverly Shores v. Bagnall, 590 N.E.2d 1059, 1061 (Ind. 1992) (citing Stewart v. Fort Wayne Cnty. Schs., 564 N.E.2d 274 (Ind.1990)). We will reverse the Commission's decision only if the evidence, viewed as a whole, demonstrates that the Commission's conclusions are clearly erroneous. Id. The reviewing court gives the Commission's decision great deference when the findings of fact or the application of the facts to the law are challenged. Id. On the other hand, if the party alleges that the Commission committed an error of law, such deference is not afforded and reversal is appropriate if an error of law is demonstrated. Id.

We presume that the Commission's decision was correct and it will not be overturned unless it is arbitrary, capricious, or an abuse of discretion. Cundiff v. Schmitt Dev. Co., 649 N.E.2d 1063, 1066 (Ind.Ct.App.1995). The Commission's decision will be sustained if it was correct on any grounds stated for disapproval of the petition. Id.

Wolff v. Mooresville Plan Comm'n, 754 N.E.2d 589, 592 (Ind.Ct.App.2001). In addition, the Indiana Supreme Court recently expounded upon the proper standard of review with regard to factual findings based on a paper record in Equicor, 758 N.E.2d 34, the relevant portion of which reads as follows:
On appeal, to the extent the trial court's factual findings were based on a paper record, this Court conducts its own de novo review of the record. Cf. Houser v. State, 678 N.E.2d 95, 98 (Ind. 1997) ("Because both the appellate and trial courts are reviewing the paper record submitted to the magistrate, there is no reason for appellate courts to defer to the trial court's finding that a substantial basis existed for issuing the warrant."). If the trial court holds an evidentiary hearing, this Court defers to the trial court to the extent its factual findings derive from the hearing. GKN Co. v. Magness, 744 N.E.2d 397, 401 (Ind.2001).
Id. at 36-37.

C. Analysis

1. Klein's Motion to Dismiss the Appeal
We first address Klein's motion to dismiss the Plan Commission's appeal on the ground that the controversy is moot by virtue of the Plan Commission's apparent grant of secondary approval to Klein's subdivision plat at the Commission's December *643 18, 2000 meeting. An appeal is moot, and need not be addressed by this Court, when the dispute at issue is no longer "live" in the sense that it has ceased to be a matter of real controversy between the parties, when the parties lack a legally cognizable interest in the outcome, or when this Court is unable to grant effective relief. Columbus Bd. of Zoning Appeals v. Wetherald, 605 N.E.2d 208, 210 (Ind.Ct.App.1992).[7] In Indiana, if a party voluntarily acquiesces in or recognizes the validity of a judgment or takes a position consistent only with the judgment's validity, the party waives its right to contest the validity of the judgment upon appeal, and any subsequent attempted appeal is moot. Dahlin v. Amoco Oil Corp., 567 N.E.2d 806, 809 (Ind.Ct.App.1991).
Here, the Plan Commission took up and granted Klein's application for secondary approval on December 18, 2000. The Plan Commission's grant of secondary approval was not mandated by the trial court, and cannot be regarded as involuntary compliance with a valid standing court order. Rather, the trial court's directive was simply that the Plan Commission should evaluate an application for secondary approval only against the standards set out in the subdivision control ordinance. This was the legally mandated procedure regardless of the court's instruction, and the Plan Commission could have denied Klein's application for secondary approval based upon proper findings if it so desired. The Plan Commission also could have challenged the trial court's judgment prior to considering Klein's request for secondary approval by, for example, filing a motion to correct error pursuant to Trial Rule 59 and then seeking a stay of the trial court's judgment pursuant to Trial Rule 62(B), or by initiating an appeal and securing a stay pursuant to Trial Rule 62(E). It did not. Rather, the Plan Commission proceeded to consider and grant Klein's application for secondary approval. The grant of secondary approval necessarily depends upon valid primary or preliminary approval. The Plan Commission's voluntary grant of Klein's application for secondary approval therefore implicitly constitutes the Plan Commission's acceptance of the validity of the trial court's reversal of the Commission's denial of Klein's application. Because the Plan Commission has voluntarily recognized and acquiesced in the validity of the trial court's determination that the Plan Commission's rejection of Klein's application for preliminary approval was erroneous, the Plan Commission's current appeal of that same question is moot.
The Plan Commission argues that the matter cannot be moot because there are several counts from Klein's Complaint that have not yet been addressed at the trial level, the outcome of which depend upon our determination of the propriety of the Plan Commission's denial of Klein's application for conditional approval. None of Klein's other claims are at issue here, and the fact that the validity of those claims may depend on whether the Plan Commission appropriately denied Klein's application is irrelevant to whether the question is moot by virtue of the Plan Commission's grant of final approval. In any event, as will be discussed shortly, we address the issues raised in this appeal.
*644 The Plan Commission also claims, although without the support of much analysis, that Klein's mootness argument was rejected by this court in Wetherald, 605 N.E.2d 208. Wetherald appears to be the only Indiana case similar to this one addressing the general rule that a party's recognition of or acquiescence in a judgment may render an appeal of the judgment moot. In Wetherald, an applicant unsuccessfully petitioned a Board of Zoning Appeals (BZA) for a variance from certain zoning restrictions so that he could build a restaurant. Id. at 210. The trial court subsequently reversed the BZA. Id. The applicant then apparently obtained a building permit from an unidentified code enforcement officer and began construction. Id. The BZA appealed and the applicant argued that the appeal was moot by virtue of the issuance of the building permit. Id. This court disagreed. Id. at 211. Wetherald, however, is distinguishable from this case. First, in that case, it was not the BZA that granted the applicant's building permit after the trial court's reversal, but some unidentified code enforcement officer, and there is no indication in this court's opinion that the BZA knew of the officer's action prior to filing an appeal. Here, the Plan Commission itself voluntarily granted Klein's application before doing anything to challenge the judgment. Moreover, we noted in Wetherald that the applicant sought to create mootness by commencing his construction project. Id. at 210. There is no evidence of anything of the kind in this case. Wetherald is accordingly inapposite to the case at hand.
While the Plan Commission's appeal is moot, we nevertheless address the issues raised. We may review moot cases when they present questions of "great public interest" that typically contain issues likely to recur. Matter of Lawrance, 579 N.E.2d 32, 37 (Ind.1991). Here, the Floyd County Plan Commission's proper consideration of applications for subdivision approval, and its proper application of the standards pertinent to that consideration, is, we believe, an issue of great interest to the citizens of Floyd County. Moreover, given the steady pace by which land throughout the state is subdivided for residential purposes, or is considered for such subdivision, the matters in question are likely to recur. We therefore address the issues raised in the Plan Commission's appeal.

2. The Plan Commission's Denial of Klein's Application

a. Consideration of the Subdivision Control Ordinance
As explained above, the Plan Commission was obligated to grant Klein's application for preliminary approval if the application satisfied the requirements provided in the county's subdivision control ordinance. Aulbach, 748 N.E.2d at 936. The trial court found that the ordinance's requirements had been satisfied, and concluded that the Plan Commission erred by failing to approve the subdivision. The Plan Commission first contends that the trial court's reversal of the Commission's decision must be overturned because the trial court's decision is unsupported by the evidence. Specifically, the Commission argues that the county subdivision control ordinance was not included with the materials provided to the court in response to the writ of certiorari and was never admitted into evidence, and that without the ordinance, the trial court had no basis upon which to reject the Plan Commission's determination. We disagree.
It appears to be true, as the Plan Commission asserts, that the Plan Commission did not provide the trial court with a copy of the subdivision control ordinance along *645 with the materials the Commission provided the court in response to the writ of certiorari. The Plan Commission explains this omission by suggesting that the writ did not request the ordinance. The writ asked for "written policies, rules and/or procedures on a subdivision approved/denied by the Floyd County Plan Commission and how such differ with [the subdivision control ordinance]...." (Appellants' App. 28C.) While this request could be read to ask for rules other than the ordinance, Indiana Code section 36-7-4-1008 obligated the Plan Commission to produce "such facts and data as may be pertinent and ... material to show the grounds of the decision on appeal." The subdivision control ordinance, as the Plan Commission must know, is one of the key pieces of material pertinent to its decision, and should have been produced pursuant to the statute. The Plan Commission appears to have understood this obligation, because it stipulated to the inclusion of the ordinance with the documents it produced in response to the writ, and because its counsel apparently delivered a copy of the ordinance to the trial court for the trial court's consideration.[8]
The Plan Commission argues, however, that its stipulation to the inclusion of the subdivision control ordinance within the materials provided for the trial court to review in response to the writ of certiorari was ineffective because Klein never formally moved to admit the ordinance into evidence during the trial court's hearing on Klein's petition. This argument represents a misunderstanding of the judicial review process. As noted above, by issuing the writ of certiorari, the trial court required the Plan Commission to provide information and documents pertinent to its decision, including materials specifically requested in the writ. IND. CODE § 36-7-4-1006 and -1008. Pursuant to Indiana Code section 36-7-4-1009, the trial court was empowered to assess Klein's allegations solely on the basis of the facts disclosed in the materials provided in return to the writ of certiorari. While the court could have supplemented that evidence by hearing testimony, id., it did not do so. The hearing that was held consisted exclusively of the argument of counsel, and the court was under no obligation to formally admit into evidence the materials submitted by the Plan Commission in response to the writ during this hearing or at any other time. In light of the Plan Commission's stipulation to the inclusion of the subdivision control ordinance with the documents provided to the trial court for its review, and the Commission's apparent delivery of the ordinance to the court, the Plan Commission may not now challenge the trial court's right to consider the ordinance.

b. The Plan Commission's Findings
The Plan Commission next argues that even if the subdivision control ordinance was properly before the trial court, the Commission appropriately determined that Klein's proposal failed to satisfy the requirements set forth in the ordinance.[9] Section III of the Floyd *646 County subdivision control ordinance provides a variety of specific standards relating to the design of proposed subdivisions, including precise requirements governing the existence and width of streets and alleys; the provision of utility easements; and the size and orientation of lots.[10] None of the numbered findings entered by the Plan Commission ostensibly justifying its rejection of Klein's plat relate to any of the specific standards set forth in the subdivision control ordinance. As previously noted, the Plan Commission entered the following numbered findings:
1. The site considered is not appropriate for the use proposed. 2. The services to be offered may be needed in the community. 3. Law Enforcement and Fire Protection may be inadequate to service the proposed use. 4. Traffic congestion and safety will suffer serious detrimental effects. 5. The use will detrimentally effect [sic] the health, safety, and welfare of the community. 6. The use may adversely effect [sic] or devaluate [sic] neighboring property. 7. The Staff Report should be adopted as part of the Findings of Fact.
(Appellee's App. 19.) The subdivision control ordinance contains no concrete standards relating to the appropriateness of a site for the use proposed[11]; the need for unidentified services in the community; the adequacy of police and fire services; traffic; the health, safety or welfare of the community; or the value of neighboring property. The Plan Commission's only task when reviewing Klein's application for preliminary approval was to determine whether the proposed plat complied with the concrete standards set out in the subdivision control ordinance, see Aulbach, 748 N.E.2d at 936, and the Plan Commission's denial of Klein's application on the basis of factors outside the ordinance was erroneous.[12]
*647 The Plan Commission notes that it adopted additional findings and appended those to the numbered findings. These findings, as previously noted, consist of the following:
The proposed Density non conforms [sic] with local uses so much to constitute spot zoning, specific requirements under existing County Ordinances both from 1968 and 1999 have not been met or are absent, certain intra structure [sic] in place to support this may not be legally sufficient under current County Ordinances to support such a land use proposal, Soil and Slope data submitted by both the Soil and Water Conservation District indicates severe to moderate limitations for all constructions including the installation of septic systems on the site which again affect the scope of the proposal, and similarly data supplied by the Environmental Assessment presented by the applicant indicates an accumulative and permanent negative impact which has not been addressed in the existing design, existing proposal, Right of way, passing blisters, reserves for future expansions, entrances all those elements under current ordinances meant to be referred to as those requirements that may be limited for the proposal before us.
(Appellee's App. 19.) Again, however, much of this is either unrelated to anything in the subdivision control ordinance or is too vague and indefinite to constitute a finding of fact or to sufficiently apprise Klein as to how his proposal failed to comply with the ordinance. For example, there are no standards in the ordinance governing the existence of supporting infrastructure or environmental impacts, and the Commission's reliance on these factors to support its denial of Klein's application was improper. Further, the Commission never said what infrastructure might be legally insufficient, or why, and did not specify which county ordinance was implicated by this insufficiency. Similarly, to the extent that the subdivision control ordinance somehow incorporates the requirements of other county ordinances, the Commission's statement that "specific requirements" from certain county ordinances "have not been met or are absent" is insufficient because the Commission never identified the ordinances, or the pertinent provisions thereof, that were purportedly implicated by the proposal. Finally, the final few lines beginning with the words "right of way" is simply a list of words and terms without any indication of their relationship, if any, to either the subdivision control ordinance or to Klein's application.
The Plan Commission attempts to relate the above findings that "[t]he proposed Density non conforms [sic] with local uses so much to constitute spot zoning," and that "Soil and Slope data submitted by both the Soil and Water Conservation District indicates severe to moderate limitations for all constructions including the installation of septic systems on the site which again affect the scope of the proposal," *648 to the standards in the subdivision control ordinance regarding the size and orientation of lots, and the size of blocks. In particular, the Plan Commission cites the following standards relating to blocks:
D. BLOCKS
1. The lengths, widths, and shapes of blocks shall be determined with due regard to:
a) Provision for adequate building sites suitable to special needs of the type of use contemplated.
b) Zoning requirements as to lot sizes and dimension.
c) Needs for convenient access, circulation, control and safety of street traffic.
d) Limitations and opportunities of topography.
2. Block lengths shall not exceed fifteen hundred (1500) feet, or be less than four hundred (400) feet.
(Appellee's App. 4.) The Plan Commission also cites the following provisions concerning the size of lots:
E. LOTS:
1. The lot size width, depth, shape, and orientation, and the minimum building setback lines shall be appropriate for the location of the subdivision and for the type of development and use contemplated.
....
3. ... The minimum lot size with respect to land subject to the provisions of this ordinance shall be governed, however, by the existing soil type, topography, and suitability thereof for the containment and disposal of sewage and waste water.
(Appellee's App. 4-5.)
The Plan Commission's findings regarding density and the suitability of the area for septic systems do not specifically address the size or dimension of blocks or of the lots in Klein's proposed subdivision. The Plan Commission appears to contend, however, that the provisions regarding block and lot sizes implicate housing density, and permit the Plan Commission to consider the density of housing within a subdivision when evaluating a proposed plat's compliance with the block and lot standards. Clearly, the size of lots within a residential subdivision dictates the subdivision's housing density, with larger lots creating less density, and smaller lots creating more. We accordingly agree that the standards in the subdivision control ordinance governing the size of lots appear to permit the Plan Commission to consider the density of housing within a proposed subdivision. The standards governing block sizes do not, however, implicate housing density, because they have no bearing on the size or number of lots into which a parcel may be subdivided, and the Plan Commission's finding regarding density cannot be said to be related to the block standards.[13]
While we agree that the subdivision control ordinance appears to allow the Plan Commission to consider housing density *649 in connection with its evaluation of a proposed plat's compliance with the standards governing lot sizes, we conclude that the Plan Commission erroneously denied Klein's application on the basis of the findings in question here. We first address the Plan Commission's apparent contention that its finding that "Soil and Slope data submitted by both the Soil and Water Conservation District indicates severe to moderate limitations for all constructions including the installation of septic systems on the site which again affect the scope of the proposal," amounts to the Commission's conclusion that Klein's proposal violated the ordinance standard dictating that "minimum lot size with respect to land subject to the provisions of this ordinance shall be governed, however, by the existing soil type, topography, and suitability thereof for the containment and disposal of sewage and waste water." First, the Plan Commission's finding is devoid of any mention of lot sizes or density, and does not appear to relate the adequacy of the property to support appropriate sewage disposal systems to the size or the number of the lots depicted on Klein's Plat. Rather, the Plan Commission's finding was only that the installation of septic systems could be problematic given soil and slope data. If the Plan Commission intended to find that the proposed subdivision contained too many lots, or lots of insufficient size, to support adequate septic systems, it could and should have done so. It did not. It simply found that the soil and topography of the area presented limitations on the installation of septic systems. There is nothing in the subdivision control ordinance regulating the installation of septic systems on this basis, and the Plan Commission's denial of Klein's application for this reason was erroneous.
In any event, a finding by the Plan Commission that the use of septic systems was inappropriate because of the area's topography or because the proposed subdivision was too dense or contained insufficiently large lots was unsupported by the evidence. Although the Plan Commission found that the Soil and Water Conservation District reported that the soil and topography presented certain limitations on septic system use, the record contains no such report. The only document in the record touching on the subject is the Floyd County Health Department's report that the soil in the area would be sufficient for some type of septic system, with different types of systems appropriate for different parts of the subdivision. As noted above, the Health Department advised that it would consider requests to use septic systems in the subdivision on a lot by lot basis, and that each individual lot would undergo a separate soil analysis to determine which type of septic system permits would be appropriate. Thus, even if there were some limitations on septic system use presented by the soil or topography as the Plan Commission apparently found, such limitations would presumably be addressed by the county health department on a lot by lot basis, and the Plan Commission's approval of Klein's application would not have resulted in the installation of inappropriate septic systems.
We next address the Plan Commission's argument that its finding that "[t]he proposed Density non conforms [sic] with local uses so much to constitute spot zoning," amounts to a determination that Klein's proposed plat violated the ordinance provision mandating that lot sizes and shapes be "appropriate for the location of the subdivision and for the type of development and use contemplated." Initially, we must determine what the Plan Commission meant in its finding. The term "spot zoning" used by the Plan Commission has been defined as "the singling out of one piece of property for a different treatment from that accorded to similar surrounding *650 land which is indistinguishable from it in character, all for the economic benefit of the owner of the lot or area so singled out." L & W Outdoor Advertising Co. v. State, 539 N.E.2d 497, 499 (Ind.Ct.App. 1989). The Plan Commission's finding therefore amounts to a determination that the density resulting from the sizes of lots in Klein's subdivision was so inconsistent with the prevailing density of the area that granting Klein's application would single out the parcel for treatment not available to neighboring properties.[14] The Plan Commission's argument is that Klein's application was properly denied on the basis of its finding. We disagree.
The Plan Commission's finding does not relate to the lot size standard the Commission cites. There is simply nothing in the subdivision control ordinance expressly indicating that a proposed plat should be evaluated on the basis of the ability of neighboring landowners to subdivide their property. It could be argued that the provision in the ordinance standard mandating that lot sizes be "appropriate" for a given "location" gives the Plan Commission the discretion to reject an application on the basis of its conclusion that the density resulting from the size of proposed lots would be inappropriate for a variety of reasons, including the one the Plan Commission cited in this case.[15] There is, however, no evidence in the record that neighboring landowners would somehow be prohibited from subdividing their properties for reasons not equally applicable to the parcel in question, as the Plan Commission found by concluding that approval of Klein's proposal would constitute spot zoning. The Plan Commission accordingly erred when it denied Klein's application on the basis of its finding regarding density and spot zoning.
In summary, the Plan Commission's only role in evaluating Klein's application *651 for primary approval was to determine whether Klein's proposed plat complied with the specific and concrete standards set forth in the county subdivision control ordinance. If the Plan Commission concluded that Klein's application did not comply with the ordinance, the Commission was obligated to provide Klein with a comprehensive list of reasons Klein's plat was defective, so that Klein could amend his application consistent with the ordinance. While the Plan Commission entered findings explaining the reasons for its denial of Klein's application, these findings, as noted above, were either unrelated to the concrete standards set out in the subdivision control ordinance, were too vague and indefinite to give Klein notice as to the nature of the alleged violation, or were unsupported by the evidence. In the absence of any proper findings that Klein's proposed plat violated the specific and concrete standards of the subdivision control ordinance, the Plan Commission's rejection of Klein's application for primary approval was erroneous, and the trial court did not err in reversing the Commission's decision.

Conclusion
In conclusion, we agree with Klein that the Plan Commission's appeal is moot, but we have addressed the issues raised therein because they present questions of significant interest to the public. We conclude that the Plan Commission erroneously denied Klein's application for preliminary approval of his proposed plat, and we would have affirmed the decision of the trial court were the appeal not moot.
Affirmed.
SHARPNACK, J., and DARDEN, J., concur.
NOTES
[1] As will be noted below, the Plan Commission provided a certified copy of its file regarding Klein's application, including Klein's proposed plat diagrams, to the trial court for the court's review. While the Plan Commission included a copy of its file in its Appendix, it did not include a copy of Klein's plat diagrams. In his Appendix, however, Klein has submitted three documents entitled "Preliminary Plat," each consisting of a diagram of the proposed subdivision. This is consistent with Appellate Rule 50(A)(3), which provides that an Appellee's Appendix may contain "additional items that are relevant to either issues raised on appeal or cross-appeal." The Plan Commission, which has objected to Klein's submission of other materials, does not challenge Klein's tender of the plat diagrams, or our ability to review them as part of the record on appeal.
[2] The Plan Commission failed to include a complete copy of the minutes for this meeting with the materials provided to the trial court in response to the writ of certiorari. Klein has provided us with what appears to be a complete copy of the minutes in his Appendix. The Plan Commission does not dispute that Klein has submitted accurate copies of the minutes, but nevertheless asks us to strike the minutes for not having been included in its response to the writ of certiorari. The Plan Commission, however, concedes that it should have provided the trial court with a copy of the minutes in response to the writ, and believed at the time that it had done so. We therefore decline to strike the minutes.
[3] Klein had asked the trial court to order the Plan Commission to accept Klein's application for preliminary approval. Rather than granting this request for mandamus, which would have been the technically appropriate relief, the trial court essentially issued a declaratory judgment regarding the status of Klein's application. The Plan Commission does not object to the nature of the trial court's judgment, and the end result is the same.
[4] This is correct. Minutes of those meetings, described above, were subsequently provided to this Court.
[5] Appellate Rule 32(A) states:

If a disagreement arises as to whether the Clerk's Record or Transcript accurately discloses what occurred in the trial court or the Administrative Agency, any party may move the trial court or the Administrative Agency to resolve the disagreement. The trial court retains jurisdiction to correct or modify the Clerk's Record or Transcript at any time before the reply brief is due to be filed. After that time, the movant must request leave of the Court on Appeal to correct or modify the Clerk's Record or Transcript. The trial court or Administrative Agency shall issue an order, which shall become part of the Clerk's Record, that either:
(1) confirms that the Clerk's Record or Transcript reflects what actually occurred; or
(2) corrects the Clerk's Record or Transcript, including the chronological case summary if necessary; to reflect what actually occurred.
[6] Appellate Rule 34(F) provides:

When the motion, response, or reply relies on facts not contained in materials that have been filed with the Clerk, the motion, response, or reply shall be verified and/or accompanied by affidavits or certified copies of documents filed with the trial court clerk or Administrative Agency.
[7] We note that Klein's arguments regarding the asserted mootness of the Plan Commission's appeal were not presented in his brief, but rather were presented to this Court nearly a month after Klein filed his brief. If it were not for the general rule that the determination of mootness is not a subject that may be waived, see Irwin R. Evens & Son, Inc. v. Board of Indianapolis Airport Authority, 584 N.E.2d 576, 589 (Ind.Ct.App.1992), we would decline to address the question. Nevertheless, we conclude that the Plan Commission's appeal is moot.
[8] The trial court's correction of the record to include the subdivision control ordinance confirms the inclusion of the ordinance within the documents provided to the trial court. We hereby deny the Plan Commission's motion to strike the ordinance from the record.
[9] The Plan Commission also contends that the trial court erred by taking judicial notice of another case involving the Plan Commission's rejection of a subdivision plat. The case was apparently offered in opposition to the Commission's request that the matter be remanded for additional findings on the ground that in the other case, the Plan Commission had been afforded the same opportunity but had failed to adopt appropriate findings, and for the proposition that the Commission routinely considered facts outside the scope of the subdivision control ordinance. Both parties devote a good portion of their briefs to this question, but its significance does not warrant the attention. First, the Plan Commission entered findings in support of its decision to reject Klein's application, and was apparently satisfied that those findings were sufficient to withstand judicial review. The trial court therefore had no obligation to remand the matter to the Plan Commission for further findings. Moreover, the assertion that the Plan Commission regularly strays from the subdivision control ordinance when reviewing proposed plats is beside the point, as the only issue before the Plan Commission and the trial court was whether Klein's application for approval satisfied the particular requirements set forth in the subdivision control ordinance. Thus, while the trial court appears to have taken judicial notice of the other case, we conclude that any error was harmless.
[10] We do not set out the provisions of the Floyd County subdivision control ordinance in full here, because the Plan Commission only attempts to relate its denial of Klein's application to the ordinance provisions regarding the size of lots and blocks. We provide the text of the pertinent provisions where appropriate below. The requirements of the provisions not addressed by the Plan Commission appear from the paper record before us to either be inapplicable or to have been met by Klein's proposed plat.
[11] In a sense, all of the concrete standards listed in the subdivision control ordinance, when considered as a whole, relate to this all encompassing consideration. However, a finding so broad is inadequate to apprise a developer of land as to the reasons for the plan commission's denial of an application for preliminary approval of a plat, and unless such a finding is linked to a particular standard, it is meaningless.
[12] Even if the subdivision control ordinance contained concrete standards related to these findings, the findings are supported by little if any evidence. Most of the "evidence" relating to traffic flow and community welfare came from members of the public who testified at the various hearings. Such testimony, however, while helpful, is totally irrelevant to establishing whether a plat complies with a subdivision control ordinance. Cundiff v. Schmitt Development Co., 649 N.E.2d 1063, 1069-70 (Ind.Ct.App.1995). Moreover, several of the "findings" do not definitively "find" any "fact." For example, finding number 2 indicates that certain services to be offered might be needed in the community. The finding, however, does not identify the nature of the services, and only states that these services "might" be needed in the community. Such speculation about unspecified possibilities is insufficient to apprise a developer as to the defect in his application, and does not constitute a factual finding. Finding 3, which hypothesizes that police and fire protection might not be adequate to serve the area, and finding 6, stating that Klein's development might adversely effect or devalue neighboring property, are equally ineffective.
[13] In any event, the standards governing block sizes do not apply here. The term "block" is generally defined as "[a] square or portion of a city or town inclosed by streets, whether partially or wholly occupied by buildings or containing only vacant lots." BLACK'S LAW DICTIONARY 171-72 (1990). The proposed subdivision at issue here is a self-contained cul-de-sac development with a single entrance, and is bounded primarily by adjacent land, and in part by a local road. The subdivision contains no discrete portions bounded by streets. Even if the subdivision contained blocks, or could be described as a single block, the Plan Commission never made any findings ostensibly touching on the size or shape of blocks within the subdivision, or on the size or shape of the subdivision itself, and its attempt to connect its findings to the standards governing blocks is unavailing.
[14] The Plan Commission appears to contend that it simply found that the lot sizes proposed by Klein were not appropriate because they created a greater level of housing density than found in the area, for in its brief, the Plan Commission fails to mention the portion of its finding regarding spot zoning. The Plan Commission, however, made a specific and clear finding. This is the finding given to Klein as the basis for the rejection of his application, and it is this finding we must review.
[15] It is unclear whether the standard in question is specific enough to afford the public, including potential developers, notice as to what lot sizes, and what level of housing density, will be acceptable. As noted above, a county's subdivision control ordinance must contain specific standards by which the plan commission can determine whether the plat qualifies for approval. IND.CODE § 36-7-4-702(b). These standards must be sufficiently specific or "concrete" as to give the public fair notice of what will be required for a parcel of land to be subdivided. See Brant v. Custom Design Constructors Corp., 677 N.E.2d 92, 99 (Ind.Ct.App.1997.) Because of the concrete and specific nature of the standards set out in a subdivision control ordinance, a plan commission has little room for the exercise of its discretion when applying those standards to a particular plat. As we stated in Yater v. Hancock County Planning Comm'n, 614 N.E.2d 568, 572 (Ind.Ct.App.1993) (citations omitted), "[d]iscretion in formulating standards should be exercised when a zoning ordinance is formulated, not when an ordinance is applied. Otherwise, discretion only serves to render unpredictable and possibly inequitable decisions if exercised too greatly when a plat proposal is submitted." The amount of discretion afforded to the Plan Commission in the subdivision control ordinance standard at issue here appears to conflict with the understanding expressed in Yater. But see Wolff, 754 N.E.2d at 592-93 (approving, as sufficiently specific and concrete, a provision in a subdivision control ordinance that land could not be subdivided if the plan commission found the land "unsuitable for such use by reason of ... any other feature harmful to the health and safety of possible residents and the community as a whole.").