**ROBERT LYNN COMPANY, INC.,**
Appellant–Petitioner/Cross–
Appellee,

v.

**TOWN OF CLARKSVILLE BOARD OF ZONING APPEALS** and Town of Clarksville Plan Commission, Appellees–Respondents/Cross–Appellants.

No. 10A04–0603–CV–133.

Court of Appeals of Indiana.

June 6, 2007.

C. Gregory Fifer, Applegate & Fifer, Jeffersonville, IN, Attorney for Appellant.

Timothy E. Ochs, Brian J. Paul, Jane H. Ruemmele, Ice Miller LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

CRONE, Judge.

### Case Summary

Robert Lynn Company, Inc. ("Lynn"), appeals the partial grant of the motion to

correct error filed by the Town of Clarksville Board of Zoning Appeals ("the BZA") and the Town of Clarksville Plan Commission ("the Plan Commission") (collectively, "the Town"). The Town appeals the partial denial of its motion to correct error. We affirm in part, reverse in part, and remand.

## Issues

Both parties present several issues for review, which we consolidate and restate as follows:

I. Whether the BZA's conditional approval of Lynn's application for a development standards variance from the local zoning ordinance is valid;

II. Whether the BZA's subsequent revocation of its conditional approval is valid; and

III. Whether the Plan Commission should be mandated to approve Lynn's application for primary approval of an amended plat.

## Facts and Procedural History[1]

Lynn owns a 30.815–acre tract of real estate ("the Real Estate") within the municipal boundaries of the Town of Clarksville ("Clarksville"). Approximately 6.3 acres of the Real Estate are zoned "R–2, Single and Two Family Residential" ("the R–2 Property"). Within the R–2 district, Clarksville's zoning ordinance permits the construction of either single- or two-family dwellings on lots that are a minimum of 6000 square feet in area and fifty feet in width. The remaining 24.515 acres of the Real Estate are zoned "R–1, Single Family Residential" ("the R–1 Property"). Within the R–1 district, the zoning ordinance permits the construction of single-family dwellings on lots that are a minimum of 7200 square feet in area and sixty feet in width.

Clarksville also has a subdivision control ordinance. State law provides that subdivision control standards regarding criteria such as minimum width, depth, and area of lots "may not be lower than the minimum standards prescribed in the zoning ordinance for a similar use." Ind.Code § 36–7–4–702(c). Pursuant to Indiana Code Section 36–7–4–700 *et seq.*, the Plan Commission is responsible for determining whether plats and replats comply with the subdivision control ordinance. Section 152.12(A) of Clarksville's subdivision control ordinance states that the Plan Commission shall not approve variances from the subdivision control ordinance unless it finds, *inter alia*, that the variance "will not in any manner vary the provisions of the Zoning Ordinance[.]" Section 152.12(D) states that the BZA does not have jurisdiction to grant variances from the subdivision control ordinance.

On May 5, 2004, Lynn obtained final approval from the Plan Commission for a plat of a twenty-seven-lot residential subdivision with up to fifty-four residential units on the R–2 Property, to be known as Meyer Manor ("MM"), and a plat of an adjacent 105–lot residential subdivision with up to 105 residential units on the R–1 Property, to be known as Meyer Manor, Section II ("MMII"). All lots met the aforementioned minimum zoning standards, and the two subdivisions share the same ingress and egress road. Lynn did not record the plats.[2]

---

1. We heard oral argument on April 26, 2007. We thank the parties for their presentations.

2. In *Plan Commission for Floyd County v. Klein*, 765 N.E.2d 632 (Ind.Ct.App.2002), the

plat approval process is described in pertinent part as follows:

The provisions in the Indiana Code governing the subdivision of land contemplate a two-stage approval process consisting of

Indiana Code Section 36–7–4–918.5(a) provides that a board of zoning appeals "shall approve or deny variances from the development standards (such as height, bulk, or area) of the zoning ordinance." On July 6, 2004, Lynn filed with the BZA an application for a variance, presumably from the zoning ordinance, that would "reduce the required 60′ lot frontage [of all lots on the R–1 Property] to 50′ lot frontage and to reduce the required 7200 sq. ft. of lot area to 6000 sq. ft." Appellant's App. at 143.[3] In other words, Lynn requested a variance that would permit all lots on the R–1 Property to be developed pursuant to the R–2 zoning standards for minimum lot area and width.

At a meeting on September 7, 2004, the BZA approved Lynn's application for variance. The BZA issued a written decision that reads in pertinent part,

1. The approval of the variance will not be injurious to the public health, safety, morals, and general welfare of the community because The Clarksville Plan Commission, Clarksville Town Board and Clarksville Board of Zoning Appeals have previously approved the use of the property for residential use and Meyer Manor Subdivision Section I is zoned R–2 which allows Two-family dwellings (duplexes). This Variance will reduce the aggregate number of residences in M[e]yer Manor Sections I and II. The reduction of residences will reduce traffic in the vicinity.

2. The use and value of the area adjacent to the property included in the Variance will not be affected in a substantially adverse manner because: the proposed use is residential and the grant of this Variance will reduce the density of housing units when considering both units of M[e]yer Manor Subdivision. Single family residences in Meyer Manor Section I will increase values in the area.

3. The need for the variance arises from some condition peculiar to the property involved, such condition not being found in common with other properties in the vicinity that are in the same zoning district and such condition not having been created by the applicant for the variance; and such condition will result in practical difficulties because: M[e]yer Manor Sections I and II have different zoning classifications. This property is closely surrounded by several different zoning jurisdictions some of which have commercial uses which have inflated land costs in the area making it

primary and secondary approval. A person who desires to subdivide land must submit a written application for primary approval of the proposed plat to the local plan commission. IND.CODE § 36–7–4–703. After the application is submitted, the plan commission is to set the matter for hearing. IND. CODE § [§ ] 36–7–4–705 and –706. In considering an application for primary approval, the plan commission is limited to determining whether the specific requirements set out in the subdivision control ordinance have been met. . . .

. . . .

The Plan Commission may grant secondary, or final, approval of a subdivision plat without further notice or hearing once the time to petition for judicial review of the commission's grant of primary approval has expired. IND.CODE § 36–7–4–710. A person may not file a subdivision plat with the county auditor, and the plat may not be recorded, until secondary approval has been granted and the plat has been signed and certified by the official designated in the subdivision control ordinance. *Id.*

*Id.* at 640–42 (some citations omitted).

3. The table of contents in Lynn's appendix indicates that the application appears on page 307. Both parties cite to that page in their briefs, but it is missing from the appendix. The application appears on page 143 as an exhibit. Lynn's application does not state its reasons for requesting the variance.

practically difficult to develop the subject property as residential in accordance with the existing developmental standards. No feasible alternative is available within the terms of the ordinance, which achieves the same goals of the applicant.

. . . .

5. The minimum required lot width for all lots within Meyer Manor Section II is reduced from 60' wide to 50' wide and the minimum lot square footage is reduced from 7,200 square feet to 6,000 square feet, *on the condition that the Plan Commission for Clarksville also approves 50' ft lots; if the Plan Commission fails to approve the 50' ft lots— which is their right to do—any variance as to lots in Meyer Manor Subdivision II is null and void.*

5. This Variance is granted on the condition that only single family detached dwelling units shall be constructed in Meyer Manor Subdivision, Section I.

Appellant's App. at 24–25 (emphasis added). The italicized language is a handwritten addendum that was approved via the signatures of Lynn and his attorney. *Id.* at 24. The variance allowed for the development of eighteen additional lots on the R–1 Property and a reduction in the total number of dwellings in the two subdivisions from 159 to 150. The meeting minutes indicate that no interested parties objected to Lynn's application for variance. *Id.* at 311.

On October 4, 2004, Lynn filed with the Plan Commission an application for primary[4] approval of amended plats and a petition for variance, presumably from the subdivision control ordinance. The petition reiterated the proposed reduction in minimum lot size for the R–1 Property and stated that "the purposes of the Town of Clarksville Subdivision Regulations would be served to a greater extent by the … proposal stated in this Petition and the approval of such requested variances would allow substantial justice to be done and the public interest secured." *Id.* at 145.[5]

At a meeting on November 1, 2004, without giving Lynn notice or an opportunity to be heard, the BZA adopted a resolution "rescinding" its approval of Lynn's application for variance. *Id.* at 28. The resolution states in pertinent part,

The Board of Zoning Appeals finds it does not have the jurisdiction or the authority to grant such a variance in regard to a proposed subdivision.

The Board of Zoning Appeals wishes to acknowledge, in order to prevent any future conflict, that the Clarksville Plan Commission has exclusive jurisdiction over lot width, depth and area in regard to subdivisions proposed for the Town of Clarksville, Indiana.

Further, the Board of Zoning Appeals, having no jurisdiction or authority in the aforesaid matter, makes no recommendation or finding of facts to the Plan Commission in regard to lot width,

---

**4.** Lynn used the term "preliminary," which is used in Clarksville's subdivision control ordinance. Consistent with the relevant statutes, we use the term "primary" in this opinion. *See, e.g.,* Ind.Code § 36–7–4–702(a) ("In determining whether to grant primary approval of a plat, the plan commission shall determine if the plat or subdivision qualifies for primary

approval under the standards prescribed by the subdivision control ordinance.").

**5.** The table of contents in Lynn's appendix indicates that the petition appears on pages 308 and 309. Page 308 is missing from the appendix. The petition appears on pages 144 and 145 as an exhibit.

depth or area in Meyer Manor Subdivision, Section II.

*Id.* Lynn did not receive notice of this action until the meeting of the Plan Commission on November 3, 2004, during which the Plan Commission rejected Lynn's petition for variance and application for an amended plat for the R–1 Property.[6]

On November 29, 2004, Lynn petitioned for certiorari review pursuant to Indiana Code Section 36–7–4–1003.[7] In its petition, Lynn alleged, *inter alia*, that the condition imposed in paragraph 5 of the BZA's September 2004 decision was illegal and void; that the BZA's revocation of that decision was also illegal and void; and that the Plan Commission erred in denying its application for an amended plat for the R–1 Property. Lynn also requested declaratory and mandamus relief, namely, the approval of the development standards variance and the amended plat for the R–1 Property.

After a hearing, on January 5, 2006, the trial court entered an order that reads in pertinent part as follows:

### [*FINDINGS OF FACT*]

. . . .

6. That no one appealed the September 7, 2004 decision of the BZA granting Lynn's variances by Certiorari or otherwise within the thirty (30) days required under Indiana Code 36–7–4–1003.

. . . .

16. That no Indiana Statute grants an Advisory Plan Commission authority to grant variances of any nature.

. . . .

19. That there is no Indiana Statute delineating or limiting the size of the property to which variances may apply as Indiana Code Section 36–7–4–918.5 simply refers to "property" and other statutes dealing with variances use the term "parcel" to refer to the property which is the subject of a variance request.

20. That Indiana Code 36–7–1–19 defines the term "subdivision" as follows:

" 'Subdivision' means the division of a parcel of land into lots, parcels, tracts, units, or interests in the manner defined, and prescribed by a subdivision control ordinance adopted by the legislative body under I.C. 36–7–4."

---

6. A plan commission's "determination that primary approval should not be granted on the ground that the requirements set out in the subdivision control ordinance have not been met must be memorialized in a written decision containing findings explaining the commission's reasons for disapproval." *Klein*, 765 N.E.2d at 641 (citing Ind.Code § 36–7–4–707(b)).

The commission must provide these findings to the developer at the first opportunity, and the findings must contain a complete list of all the specific and concrete reasons the proposed plat fails to comport with the standards set out in the ordinance, so that the developer may amend its plat to comply with the ordinance.

*Id.* The Plan Commission did not issue written findings regarding the denial of Lynn's submissions until December 1, 2004, nearly a month after the November 3 meeting.

7. Indiana Code Section 36–7–4–1003(a) provides in pertinent part,

Each person aggrieved by a decision of the board of zoning appeals ... may file with the circuit or superior court of the county in which the premises affected are located, a verified petition setting forth that the decision is illegal in whole or in part and specifying the grounds of the illegality.

Indiana Code Sections and 36–7–4–708 and 36–7–4–1016 provide that "[t]he primary approval or disapproval of a plat by the plan commission" may be reviewed by certiorari "in the same manner as that provided for the appeal of a decision of the board of zoning appeals."

21. That if the BZA lacks jurisdiction to grant variances within subdivisions and the Clarksville Subdivision Ordinance prohibits variances as to the provisions of the Zoning Ordinance then the area, yard setbacks, height, minimum floor area, maximum lot coverage, off street parking and loading requirements, sign requirements, landscaping requirements, among other provisions of the Clarksville Zoning Ordinance as development standards could not be excused or varied within a subdivision.

22. That Clarksville has not argued or contended any specific standard by which certain variances within the subdivision would be allowed to be approved by the BZA and yet the BZA grants variances in a subdivision while claiming that the BZA is without jurisdiction to do so for Lynn. Such action is arbitrary and capricious.

### THE COURT RULES AS CONCLUSIONS OF LAW

1. Clarksville's Subdivision Ordinance defers to its Zoning Ordinance for developmental standards and the request for variances filed with the BZA by Lynn concerning lot width and minimum square footage area were for developmental standards variances from the Zoning Ordinance.

2. The BZA has jurisdiction under Indiana Code 36–7–4–918.5 to grant developmental standards variances regarding the area of subdivision lots which includes lot width and minimum lot square footage contained in and governed by Section 2.1.3 of the Clarksville Zoning Ordinance.

3. The initial actions of the BZA, in granting Lynn's requested variances from developmental standards lot width and minimum lot square footage area were not ultra vires acts.

4. That the action of the BZA on November 1, 2004 in revoking the variance granted to Lynn on September 7, 2004 was illegal and contrary to law.

5. The denial of the amended plat/replat for Meyer Manor II by the Plan Commission was illegal and contrary to law and should have been approved as a ministerial act by the Plan Commission.

6. That the Condition contained in the Findings of Fact and Variances granted Lynn on September 7, 2004 is void and of no effect as neither Lynn nor the BZA could confer jurisdiction on the Plan Commission regarding developmental standards variances.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:**

1. That Lynn is hereby granted judgment as requested in his verified petition.

2. That the BZA is hereby mandated and directed to forthwith enter the approval of the developmental standards variances granted by the BZA to Lynn on September 7, 2004 in its official records.

3. That the Plan Commission is hereby mandated and ordered to forthwith enter its approval of the Replat/Plat of Meyer Manor Subdivision II as presented at its meeting on November 3, 2004 and to fully and completely enter its written approval on the official plat for recording purposes in Clark County, Indiana.

*Id.* at 180–84 (citations omitted). The trial court entered final judgment on the above issues and claims.

On January 13, 2006, the Town filed a motion to correct error. At the hearing on the motion, the parties reached an agreement allowing Lynn to record a plat for

and develop the R–2 Property with single-family dwellings. Tr. at 161–66. On February 22, 2006, the trial court entered an order that reads in pertinent part as follows:

### SPECIFIC FINDINGS OF FACT

1. **On September 7, 2004, the BZA did *not* approve Lynn's request for a development standards variance (DSV).**

The express language adopted by the BZA does not indicate a clear and unambiguous approval of Lynn's variance requested to reduce the lot widths and square footage of lots in MMII. In fact, the ambiguous nature of a so-called variance approval conditioned upon future events by the Plan Commission with the right to deny the approval is in fact, no approval at all. The BZA's attempt to condition its approval does not comply with I.C. 36–7–4–918.5 and must therefore be interpreted as a non-approval or at best, a mere non-binding recommendation to the Plan Commission.

2. **The BZA action on September 7, 2004 was voidable, rather than a void act.**

The court having found that said BZA action was either a denial of the variance or at best, a non-binding recommendation to the Plan Commission, then logically, the BZA did not exceed its jurisdiction by engaging in an ultra vires act. A voidable act may be challenged by a writ of review within 30 days under I.C. 36–7–4–1003 or the issue is waived by each party.

3. **The BZA had no authority to revoke its vote on the Lynn variance previously taken on September 7, 2004 and such action is null and void.**

The action of the BZA on November 1, 2004 taken without notice to Lynn or an opportunity to be heard and well outside the 30 day period is particularly offensive to Lynn. This court does not approve of this process. In any event, the BZA does not have the authority to revoke a grant of DSV, even if one had been granted, and any attempt to do so must fail.

4. **Lynn did not receive a fair hearing on its proposed amendments to MMII before the Plan Commission on November 3, 2004.**

The court finds that said hearing failed even the semblance of fundamental due process and fairness due to the BZA's actions on November 1, 2004, only two days before Lynn's appearance before the Plan Commission. The record shows that the Plan Commission was aware of the BZA's rescinded vote. The court finds that on these facts, the taint of incompetent evidence overshadowed competent evidence considered by the Plan Commission and that fairness dictates a new hearing.

5. **Plan Commission has no legal duty to approve Lynn's amendments or re-plat of MMII but must provide a fair hearing process.**

Consistent with earlier findings, the application for amendments or a re-plat of MMII is subject to careful analysis by the Plan Commission under the S.R.O. and that such approval is more than a ministerial act that makes mandamus an inappropriate remedy for the court [to] consider. Lynn expressed repeated doubts about his ability to obtain a fair hearing from the Plan Commission due to previous actions by the Town attorney and the BZA. Lynn's concern about

the fairness of a new hearing and whether Clarksville will act in good faith are legitimate concerns. However, Lynn's concerns cannot control the outcome by asking this court to substitute its judgment for that of the Plan Commission. In the absence of a directive from the Court of Appeals, this court finds that mandamus is not an appropriate remedy.

6. **This matter should be remanded to the Plan Commission with instructions that the BZA lacked authority to rescind its vote on Lynn's variance request on September 7, 2004.**

Explanation provided above.

### *CONCLUSIONS OF LAW*

1. The Clarksville Town Council is exclusively authorized to adopt ordinances containing provisions for subdivision control, which ordinances must be adopted, amended or repealed in the same manner as the zoning ordinance. (I.C.36–7–4–701).

2. The Town's advisory Plan Commission is required by statute to prepare the subdivision control ordinance for the Town. After its adoption, Indiana statutes provide the Plan Commission with *exclusive* control over the approval of all plats and re-plats of land covered by the subdivision control ordinance.

3. A subdivision control ordinance for an advisory Plan Commission such as the Town of Clarksville is required to include certain definite standards for subdivision approval, among which is a provision for the minimum width, depth and area of a lot in a subdivision.

4. I.C. 36–7–4–702(c) requires that the standards fixed in the subdivision control ordinance *cannot* be lower than the minimum standards prescribed in

the municipality's zoning ordinance for a similar use. The use (zoning classification) being considered herein at all times was residential, R–1.

5. The legislative body of the Town, the Town Council, adopted the Clarksville Zoning Ordinance, which requires that every lot in an R–1 zone *shall* conform to the minimum lot area and widths: width of no less than sixty (60) feet and not less than seven thousand two hundred (7,200) square feet of lot area.

6. In the subdivision control ordinance that the Clarksville Town Council adopted, the minimum lot dimension for a subdivision to be approved by the Plan Commission must comply with the minimum lot dimensions set out in the Town of Clarksville Zoning Ordinance. The minimum lot dimensions in the zoning ordinance are incorporated into the Town's subdivision control ordinance, by reference, and become a part of the subdivision control ordinance [ . . . ] as if fully set out therein. Therefore, the Town's subdivision control ordinance requires that lot dimensions for all lots in a subdivision must meet the minimum lot dimension standards established firstly in the zoning ordinance for a given zoning classification (i.e., R–1, herein) in order for the plat to be approved by the Town's advisory Plan Commission.

7. I.C. 36–7–4–707 and similarly stated provisions of the Town's subdivision control ordinance require the Plan Commission to determine whether or not the preliminary plat of a proposed subdivision complies with the standards of the Town's subdivision control ordinance. In the event that the preliminary and final plats of a proposed subdivision meet the minimum standards required by the subdivision control ordinance, the Plan Commission must approve the sub-

division plat as [a] ministerial act. Conversely, the Plan Commission may *not* approve a subdivision plat with lots which do *not* meet the minimum standards of the subdivision control ordinance and the requirements of state statutes.

8. The Clarksville Plan Commission has limited authority to grant variances to the *subdivision control ordinance* regarding an individual parcel of real estate but only after receiving evidence and making [certain] findings[.]

9. The review and approval of subdivision plats is guided by state statutes and by the local subdivision control ordinance which grants exclusive authority to approve subdivision plats to the Plan Commission.

10. The actions by the BZA on September 7, 2004 had the effect of making a non-binding recommendation to the Plan Commission concerning any decision to approve or deny an amendment or re-plat of MMII that would later be filed by Lynn. In any event, the BZA did not actually approve the development standards variance or otherwise engage in a[n] ultra vires act by making a non-binding recommendation to the Plan Commission.

11. The BZA does not have the authority to grant a development standards variance (DSV) with conditions under I.C. 36–7–4–918.5, as opposed to I.C. 36–7–4–918.4.[8]

12. That the action of the BZA on November 1, 2004 in revoking the variance granted to Lynn on September 7, 2004, was null and void and contrary to law. Said action by the BZA should not have been considered by Plan Commission on November 3, 2004 upon Lynn's request to amend or re-plat MMII.

13. Lot dimensions are only a part of what the Plan Commission must consider and evaluate in approving the development of a subdivision. The width, grade, curve of streets, as well as the coordination of the subdivision's streets with other streets in the area must be considered and approved. The extension of water, electrical and sanitary sewer utilities to the properties, as well as sidewalks, lighting and other amenities must be evaluated and meet standards. The preservation of adequate green space is important to the health and safety of the community and must be considered and approved as part of the approval of a subdivision plat. The Plan Commission also evaluates and approves the subdivision as to its impact on schools, parks and other public facilities. The Plan Commission was under no duty to approve Lynn's amended plat or re-plat of MMII; it was no ministerial act. Therefore, mandamus is an inappropriate remedy.

14. I.C. 36–7–4–918.5 is the princip[al] enabling statute which fixes the authority of the BZA for approving variances from the development standards of the *zoning ordinance.*

15. That Lynn was denied a fair hearing due to the actions of the BZA on November 3, 2004, contrary to law, and is therefore entitled to a rehearing before the Plan Commission consistent with this Order.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:**

1. Clarksville's Motion to Correct Errors and Reverse Judgment is granted in part and denied in part

---

**8.** Indiana Code Section 36–7–4–918.4 states in pertinent part, "A board of zoning appeals shall approve or deny variances of *use* from the terms of the zoning ordinance. The board may impose reasonable conditions as a part of its approval." (Emphasis added.)

consistent with this Order of Judgment.

2. That any part of the Court's original Order and Judgment entered on January 5, 2006 that is inconsistent with this Order of Judgment is rescinded as null and void.

3. The Plan Commission is directed to grant a new hearing on Lynn's application for an amended plat or replat of MMII consistent with this Order of Judgment.

4. The Court finds that there is not just reason for delay and the Court expressly enters judgment as herein stated as to less than all issues, claims or parties and finds that this judgment is a final judgment.

*Id.* at 16–22 (citations omitted). Both Lynn and the Town now appeal.

## Discussion and Decision

### Standard of Review

In *Hoosier Outdoor Advertising Corp. v. RBL Management, Inc.,* we explained that Indiana Code Section 4–21.5–5–14 establishes the scope of judicial review of an administrative decision. Section 4–21.5–5–14(d) provides that a court may grant relief only if the agency action is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. Section 4–21.5–5–14(a) places the burden of demonstrating the invalidity of agency action on the party asserting the invalidity.

In reviewing an administrative decision, a trial court may not try the facts de novo or substitute its own judgment for that of the agency. Neither the trial court nor the appellate court may reweigh the evidence or reassess the credibility of witnesses. Reviewing courts must accept the facts as found by the [agency].

844 N.E.2d 157, 162–63 (Ind.Ct.App.2006) (citations and quotation marks omitted), *trans. denied.* The relevant facts are undisputed. As such, our primary focus is on questions of law, which we review de novo. *Id.* at 163.

### I. Whether the BZA Issued a Valid Approval of Lynn's Application for Variance

 Lynn challenges the trial court's determination that the BZA did not approve Lynn's application for a development standards variance from the zoning ordinance in its September 2004 decision. Indiana Code Section 36–7–4–918.5(a) states,

A board of zoning appeals shall approve or deny variances from the development standards (such as height, bulk, or area) of the zoning ordinance.[9] A

---

9. Clarksville's zoning ordinance provides that the BZA "shall approve or deny variances from the development standards of the Zoning Ordinance." CLARKSVILLE, IN. ZONING ORDINANCE § 4.2.4. For the first time in these proceedings, the Town points to the zoning ordinance's definition of "variance":

A specific approval granted by the Advisory Board of Zoning Appeals in the manner prescribed by this Ordinance, to deviate from the development standards (such as

height, bulk, yards) that the Ordinance otherwise prescribes. *Changes in area requirements (e.g., minimum lot area,* minimum floor area, dwelling unit densities, maximum lot coverage, requirements for off-street parking and off-street loading spaces in number and area, maximum sign numbers and area) *are not permitted by this Ordinance except by zoning map amendment.*

variance may be approved under this section only upon a determination in writing that:

(1) the approval will not be injurious to the public health, safety, morals, and general welfare of the community;

(2) the use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner; and

(3) the strict application of the terms of the zoning ordinance will result in practical difficulties in the use of the property. However, the zoning ordinance may establish a stricter standard than the "practical difficulties" standard prescribed by this subdivision.

As indicated *supra,* the BZA entered such findings in its September 2004 decision.

Indiana Code Section 36–7–4–911 states that "[a]ction of the board of zoning appeals is not official, unless it is authorized by a majority of the entire membership of the board." Lynn notes that the BZA unanimously approved its application for variance at the September 2004 meeting and that the BZA's written decision specifically states that the requested variance was "hereby granted." Appellant's App. at 313.

So far, so good. Nevertheless, the trial court concluded that the BZA did not approve Lynn's application for variance based on what it characterized as "[t]he BZA's attempt to condition its approval" on "future events by the Plan Commission[,]" which it determined "does not comply with I.C. 36–7–4–918.5" and "is in fact, no approval at all." Appellant's App. at 16. As mentioned *supra,* Indiana Code Section 36–7–4–918.4 provides that a board of zoning appeals "may impose reasonable conditions as a part of its approval" of a use variance. Indiana Code Section 36–7–4–918.5 does not contain similar language regarding the approval of a development standards variance.[10] Here, however, both Lynn and the BZA specifically agreed to the condition at issue—in other words, the BZA did not unilaterally impose the condition—and no one appealed the condition within thirty days of the BZA's September 2004 decision pursuant to Indiana Code Section 36–7–4–1003. Under these unique circumstances, we conclude that both the approval and the condition are valid.

▮ We turn now to the Town's contention that the BZA lacked jurisdiction to grant Lynn's application for variance, which the Town characterizes as an improper request to rezone the R–1 Property. We presume that the Town refers to a

---

*Id.* § 1.9 (emphases added). Based on the italicized language, the Town claims that "the BZA did not have the authority to grant the relief requested by Lynn." Appellees' Br. at 14. We disagree. Leaving aside the question of whether the Town has waived this argument by raising it for the first time on appeal, we note that "a zoning ordinance may not in any way restrict the authority of a board of zoning appeals to grant a variance where the enabling statute endows such board with powers to authorize variances from the terms of any zoning ordinance." *Strange v. Bd. of Zoning App. of Shelby County,* 428 N.E.2d 1328, 1332 (Ind.Ct.App.1981). We are unpersuaded by the Town's argument that Strange is inapplicable because it addressed an earlier

version of Indiana Code Section 36–7–4–918.5, which did not provide that "a zoning ordinance may establish a stricter standard than the 'practical difficulties' standard prescribed" by that statute. The definition of a variance is separate and distinct from the standard for granting a variance.

**10.** Subsection 4.3.1 of Clarksville's zoning ordinance provides that the BZA "may add reasonable conditions to the granting of a variance so as to accomplish the ends stated in" that subsection. At oral argument, both parties acknowledged that conditions are often imposed on development standards variances in the workaday world.

lack of subject matter jurisdiction, which is not an issue subject to waiver and renders a decision void. *City of Marion v. Howard,* 832 N.E.2d 528, 531 (Ind.Ct.App. 2005), *trans. denied* (2006), *cert. denied; cf. Jennings v. Jennings,* 531 N.E.2d 1204, 1206 (Ind.Ct.App.1988) ("[P]ersonal jurisdiction may be waived."). We acknowledge that a board of zoning appeals' consideration of a variance petition is a quasi-judicial function, *see Schlehuser v. City of Seymour,* 674 N.E.2d 1009, 1014 (Ind.Ct.App.1996), and that the power to rezone is a legislative function. *See City of E. Chicago v. Sinclair Refining Co.,* 232 Ind. 295, 309, 111 N.E.2d 459, 465 (1953). That said, we believe that the Town has mischaracterized the BZA's alleged error as jurisdictional.

In *K.S. v. State,* 849 N.E.2d 538 (Ind. 2006), our supreme court clarified that, in the judicial context, there are only two kinds of jurisdiction: subject matter jurisdiction, which is "the power to hear and determine cases of the general class to which any particular proceeding belongs[,]" and personal jurisdiction, which "requires that appropriate process be effected over the parties." *Id.* at 540. The court noted that "[a]ttorneys and judges alike frequently characterize a claim of procedural error as one of jurisdictional dimension. The fact that a trial court may have erred along the course of adjudicating a dispute does not mean it lacked jurisdiction." *Id.* at 541. The court further explained, "*Real* jurisdictional problems would be, say, a juvenile delinquency adjudication entered in a small claims court, or a judgment rendered without any service of process. Thus, characterizing

other sorts of procedural defects as 'jurisdictional' misapprehends the concepts." *Id.* at 542.

We believe that these principles are equally applicable to administrative proceedings. *See, e.g., State Bd. of Tax Comm'rs v. Jewell Grain Co.,* 556 N.E.2d 920, 921 (Ind.1990) (referring to administrative subject matter jurisdiction). Here, the Town does not contend that the BZA did not have the power to hear and determine Lynn's application for a development standards variance or that the BZA did not effect appropriate process over Lynn; rather, it contends only that the BZA erred in granting a development standards variance as to the minimum lot size for an entire subdivision.[11]

In *Nelson v. Board of Zoning Appeals of Indianapolis,* 240 Ind. 212, 162 N.E.2d 449 (1959), our supreme court upheld a variance for the construction of a sixteen-unit apartment building in a zoning district restricted to one- and two-family dwellings. The court explained that "[t]here is no fixed categorical limitation on what use may or may not be the subject of a variance. The controlling factors in each case are the surrounding circumstances and facts for the determination of the administrative board." *Id.* at 220, 162 N.E.2d at 452; *see also Sinclair Refining Co.,* 232 Ind. at 309, 111 N.E.2d at 465 ("Courts cannot rezone property. Neither can they lay down any general rule defining the area or size of a particular piece of property which a Board of Zoning Appeals may consider under the unnecessary hardship rule [in a variance proceeding]. Each case must be determined on its own merits.").[12]

---

**11.** At oral argument, the Town conceded that the BZA could have granted such a variance on a lot-by-lot basis.

**12.** Our supreme court's decisions in *Nelson* and *Sinclair* postdate this Court's decision in

*Antrim v. Hohlt,* 122 Ind.App. 681, 108 N.E.2d 197 (1952), upon which the Town relies in claiming that "[a]ny variance that so changes the character of an area so that it is not in harmony with the general purpose and intent of the zoning ordinance must be effect-

To the extent that the BZA might have erred in granting a development standards variance as to minimum lot size for an entire subdivision, we conclude that any error did not implicate the BZA's subject matter jurisdiction. *See K.S.,* 849 N.E.2d at 540–42 (distinguishing jurisdictional defects from legal and procedural errors); *see also Town of Merrillville Bd. of Zoning App. v. Pub. Storage, Inc.,* 568 N.E.2d 1092, 1094 (Ind.Ct.App.1991) ("[T]he granting of a variance is a matter committed to the discretion of boards of zoning appeal[.]"), *trans. denied.* No aggrieved person timely petitioned for judicial review of this alleged error pursuant to Indiana Code Section 36–7–4–1003, and therefore the issue is waived. *See K.S.,* 849 N.E.2d at 542 (holding that untimely claim of procedural error was waived).

In sum, we conclude that the BZA issued a valid conditional approval of Lynn's application for a development standards variance from Clarksville's zoning ordinance in its September 2004 decision. We therefore reverse the trial court's ruling on this issue.

## II. BZA's Revocation of September 2004 Decision

■ At oral argument, the Town properly conceded that the BZA's revocation of its September 2004 decision—without giving Lynn notice or an opportunity to be heard—is void and ineffective.[13] *See Schlehuser,* 674 N.E.2d at 1014 (holding that zoning board had implied authority to revoke variances "if they were granted subject to reasonable and clearly stated conditions of approval and if Schlehuser then failed to meet those conditions. However, even in this circumstance, Schlehuser was entitled to notice and an oppor-

tunity to be heard."). We therefore affirm the trial court's ruling on this issue.

## III. Mandate

■ Finally, we focus on whether the Plan Commission should be mandated to approve Lynn's application for primary approval of an amended plat for the R–1 Property. "[M]andate is an extraordinary remedy, expressly provided for by statute, which may be sought against a public officer to compel performance of any act which the law specifically enjoins or any duty resulting from any office, trust or station." *Brant v. Custom Design Constructors Corp.,* 677 N.E.2d 92, 95 (Ind.Ct. App.1997). "A party requesting mandate must have a clear and unquestioned legal right to the relief sought and must show that the respondent has an absolute duty to perform the act demanded." *Id.*

■ As a threshold matter, we first address the Plan Commission's rejection of Lynn's petition for a variance from the subdivision control ordinance. In its original judgment, the trial court found that "no Indiana Statute grants an Advisory Plan Commission authority to grant variances of any nature." Appellant's App. at 182 (finding 16). The Town did not specifically challenge this finding in its motion to correct error, except to say that "the BZA has no authority to grant variances to minimum lot dimension requirements in a subdivision[;] any such action would be *ultra vires* and null and void." *Id.* at 191. In its order on the Town's motion to correct error, the trial court concluded that the Plan Commission "has limited authority to grant variances to the *subdivision control ordinance* regarding an individual parcel

ed by an amendment to the zoning ordinance." Appellee's Br. at 17.

13. The Town's concession was premised on the validity of the BZA's conditional approval of Lynn's application for a development standards variance.

of real estate but only after receiving evidence" and making findings required by Section 152.12 of the ordinance. *Id.* at 19.

We think that the trial court had it right the first time around. It is well settled that "an administrative agency has only those powers conferred on it by the General Assembly; powers not in its legislative grant cannot be assumed by the agency nor implied to exist in its powers." *Fort Wayne Educ. Ass'n, Inc. v. Aldrich,* 527 N.E.2d 201, 216 (Ind.Ct.App.1988). Unless a grant of power can be found in the relevant statutes, we must conclude that there is none. *Knox County Rural Elec. Membership Corp. v. PSI Energy, Inc.,* 663 N.E.2d 182, 189 (Ind.Ct.App.1996), *trans. denied.* Several statutes confer powers and duties on plan commissions, the most pertinent of which is Indiana Code Section 36–7–4–405. That statute provides that a plan commission shall make recommendations to the local legislative body regarding the adoption or amendment of various plans and ordinances (including a subdivision control ordinance) and shall "render decisions concerning and approve plats, replats, and amendments to plats of subdivisions under the 700 series of this chapter." Ind.Code § 36–7–4–405(a).[14] Nowhere, however, has the legislature conferred power on plan commissions to grant variances from subdivision control ordinances.[15]

■ This makes sense, given that the legislature has specifically authorized boards of zoning appeals to approve variances from zoning ordinances. *See* Ind. Code § § 36–7–4–918.4 (use variances), – 918.5 (development standards variances). Undaunted, the Town points to Indiana Code Section 36–7–4–702(c), which provides that subdivision control standards regarding criteria such as minimum width, depth, and area of lots "may not be lower than the minimum standards prescribed in the zoning ordinance for a similar use." A commonsense reading of the statutory zoning scheme dictates that once a board of zoning appeals has granted a variance from the minimum development standards of the zoning ordinance for a certain property, the terms of that variance establish the minimum development standards of the subdivision control ordinance for that property. To conclude otherwise would render zoning boards nugatory and bestow powers upon plan commissions that the legislature did not grant. *Cf. In re 2002 Floyd County Tax Sale,* 813 N.E.2d 805, 807 (Ind.Ct.App.2004) ("Statutes relating to the same general subject matter are *in pari materia* and should be construed together so as to produce a harmonious statutory scheme. Moreover, we will reject an interpretation of a statute that produces an absurd result.") (citation omitted). For all these reasons, we conclude that any references in Clarksville's zoning or subdivision control ordinances to the Plan Commission's authority to grant variances from the subdivision control ordinance are void and ineffective.

■ If the BZA had unconditionally approved Lynn's application for a development standards variance from the zoning ordinance, we would consider next whether the Plan Commission should be mandated to approve Lynn's application for primary approval of an amended plat for the R–1 Property. As it happened, however, Lynn and the BZA specifically agreed to condition the viability of the variance on the Plan Commission's approval. *See* Appel-

---

**14.** These powers are reiterated in Indiana Code Section 36–7–4–701.

**15.** Our research reveals only one case in which a plan commission granted a variance, and its authority to do so was not at issue. *See Brant,* 677 N.E.2d at 100.

lant's App. at 24 ("The minimum required lot width for all lots within Meyer Manor Section II is reduced from 60' wide to 50' wide and the minimum lot square footage is reduced from 7,200 square feet to 6,000 square feet, *on the condition that the Plan Commission for Clarksville also approves 50' ft lots; if the Plan Commission fails to approve the 50' ft lots—which is their right to do—any variance as to lots in Meyer Manor Subdivision II is null and void.*") (emphasis added). We take this to mean that prior to (and apart from) any consideration of Lynn's amended plat, the Plan Commission must consider the propriety of the variance from the zoning ordinance. The peculiar circumstances of this case have left us in uncharted waters as to the proper standard for the Plan Commission's review. Suffice it to say that it may not be a less strict standard than that used by the BZA pursuant to Indiana Code Section 36–7–4–918.5. We remand for the Plan Commission to conduct a hearing and issue a written decision stating its reasons for either approving or disapproving the variance.

If, in fact, the Plan Commission approves the variance, it may then consider Lynn's application for primary approval of an amended plat for the R–1 Property. Indiana Code Section 36–7–4–702 provides in pertinent part,

(a) In determining whether to grant primary approval of a plat, the plan commission shall determine if the plat or subdivision qualifies for primary approval under the standards prescribed by the subdivision control ordinance.

(b) The subdivision control ordinance must specify the standards by which the commission determines whether a plat qualifies for primary approval. The ordinance must include standards for:

(1) minimum width, depth, and area of lots in the subdivision;

(2) public way widths, grades, curves, and the coordination of subdivision public ways with current and planned public ways; and

(3) the extension of water, sewer, and other municipal services.

The ordinance may also include standards for the allocation of areas to be used as public ways, parks, schools, public and semipublic buildings, homes, businesses, and utilities, and any other standards related to the purposes of this chapter.

. . . .

(d) As a condition of primary approval of a plat, the commission may specify:

(1) the manner in which public ways shall be laid out, graded, and improved;

(2) a provision for water, sewage, and other utility services;

(3) a provision for lot size, number, and location;

(4) a provision for drainage design; and

(5) a provision for other services as specified in the subdivision control ordinance.

Lynn contends that

[a] plat of the R–1 Property had previously been approved by the Plan Commission, and as such, presumably met the development standard requirements of the Town's subdivision control ordinance. The only change from this previously approved plat was as to lot area and lot width within the R–1 Property. No issues were raised or considered by the Plan Commission or the trial court in this cause regarding any alleged deficiencies in the amended plat with respect to streets, utilities, or green space.

It is well settled that the Plan Commission had the ministerial duty to approve the amended plat upon deter-

mining that it satisfied the applicable concrete development standards of the subdivision control ordinance.

Appellant's Br. at 25–26 (citing, *inter alia, Klein,* 765 N.E.2d 632; *Cundiff v. Schmitt Dev. Co.,* 649 N.E.2d 1063 (Ind.Ct.App. 1995); *Plan Comm'n of Harrison County v. Aulbach,* 748 N.E.2d 926 (Ind.Ct.App. 2001), *trans. denied* (2002)).

Lynn's contention disregards that the variance at issue allows for the development of eighteen additional lots on the R–1 Property—a seventeen-percent increase—which may well affect whether the amended plat "qualifies for primary approval under the standards prescribed by the subdivision control ordinance." Ind.Code § 36–7–4–702(a). Lynn offers no convincing argument to the contrary, and we must defer to the Plan Commission's expertise in this area. *See Markland v. Jasper County Planning & Dev. Dep't,* 829 N.E.2d 92, 96 (Ind.Ct.App.2005) ("There is a presumption that determinations of the plan commission, as an administrative agency with expertise in the area of subdivision plan problems, are correct and should not be overturned unless they are arbitrary, capricious, or an abuse of discretion."). Consequently, we affirm the trial court's conclusion that mandate is an inappropriate remedy with respect to the plat approval process.[16]

### Conclusion

To reiterate, we reverse the trial court's judgment on the Town's motion to correct error in part and hold that the BZA issued a valid conditional approval of Lynn's application for a development standards variance from the zoning ordinance. We af-

firm the trial court's judgment in part and hold that the BZA's revocation of its conditional approval is void. We also hold that any references in Clarksville's zoning or subdivision control ordinances to the Plan Commission's authority to grant variances from the subdivision control ordinance are void and ineffective. We remand for the Plan Commission to conduct a hearing and issue a written decision stating its reasons for approving or disapproving the variance conditionally granted by the BZA. If the Plan Commission approves the variance, it may consider Lynn's application for primary approval of an amended plat for the R–1 Property. We affirm the trial court's conclusion that mandate is an inappropriate remedy with respect to the plat approval process.

Affirmed in part, reversed in part, and remanded.

SULLIVAN, J., and BARNES, J., concur.

---

16. Lynn claims that remand is "a wholly useless and inappropriate remedy, particularly given the poisonous effect that the BZA's illegal attempted revocation of the development standards variances had on Lynn's ability to obtain a fair and impartial determination."

Appellant's Br. at 26 (typography altered). While the Town's previous actions in this case are certainly cause for concern, we trust that the Plan Commission will fulfill its duties fairly, impartially, and in accordance with applicable law.